IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KWEKU HANSON ) <br> individually and on behalf of ) <br> all others similarly situated ) <br> Plaintiffs ) <br> ) <br> v. ) <br> ) <br> OCWEN FEDERAL BANK, ET. AL. ) <br> Defendants ) <br> ) | DOCKET #**3:02CV960 (CFD)** <br><br><br><br><br><br><br><br> NOVEMBER 17, 2003 |

<u>PLAINTIFFS' OBJECTION TO OCWEN DEFENDANTS' MOTION FOR</u>

<u>ORDER TO SHOW CAUSE DIRECTED AGAINST KWEKU HANSON</u>

Plaintiffs submit this Objection, opposing Ocwen's outrageous and misguided motion for an order to show cause against Plaintiff Kweku Hanson for allegedly "failing to respond truthfully to discovery *previously ordered by this Court* and for appropriate sanctions" under Fed.R.Civ.P. 37(b).[1] As Plaintiffs will demonstrate, not only is Ocwen's motion meritless, but in fact it is Ocwen which, persisting in its pattern and practice of prevarication and redaction of records under false pretenses, warrants bearing the brunt of this Court's contempt and severe sanctions.

**ORAL ARGUMENT IS REQUESTED**

**TESTIMONY WILL BE REQUIRED**

---

[1]   Emphasis in Defendants' original 11/7/03 motion.

-1-

As a threshold matter, this Court should summarily deny Ocwen's motion for Order to Show Cause because Ocwen has not complied with the prerequisites of Fed.R.Civ.P. 37, namely that it "meet and confer" with Plaintiffs to try in good faith to resolve the particular dispute at bar. Ocwen cannot in good faith assert that this motion relates back to its "meet and confer" efforts during June, 2003. This is because Ocwen apparently only recently discovered the existence of Hanson's clearly hearsay email, many months after the parties last "meet and confer."[2]

What Ocwen is attempting to do is: (1) use scare tactics to try to intimidate Plaintiffs, who are poised to pull a particularly precise pugilistic punch; (2) paint Plaintiffs as prevaricators when Ocwen is actually the expert in dilatory and deceptive discovery; and (3) use the mechanism of an Order to Show Cause to circumvent impending adjudication of the discovery disputes by Magistrate Judge Garfinkel on November 24, 2003.

These circumstances notwithstanding, if this Court decides to proceed to the merits of Ocwen's motion for Order to Show Cause, Plaintiffs ask the Court to carefully consider their contentions as laid out on the following pages of this Objection.

---

[2] Of course, if Ocwen wants to get the email admitted substantively, that is for the truth of the matters asserted therein (as Ocwen appears to want to do with at least a part of it), Plaintiffs would have absolutely no objection to this Court accepting the contents of the email for their inherent truth.

-2-

Plaintiff Hanson, a member of the bar of this Court, fully participated in the intensive debates which characterized Ocwen's largely unsuccessful efforts to discover the moles within its midst during the Fall of 2002.[3] After this Court issued a disclosure decision with which Plaintiffs disagreed the Court, upon Plaintiffs' motion, reconsidered its ruling. It ordered Hanson to "provide the defendants with the names of *any current or former Ocwen employees that have turned over any Ocwen customer information to [Hanson]* and to describe the nature and content of the communications between [Hanson] *and those employees*. [Hanson] shall also provide the defendants with any *customer documents* received from Ocwen employees."[4]

*Under oath*, Hanson responded to Ocwen's interrogatories and production requests in the exact manner reported in Ocwen's 11/7/03 Memorandum of Law, p.3.[5] Ocwen intimates that Hanson's cited answers were false or somehow failed to follow (or wilfully disobeyed) this Court's order. Hanson is no Alabama's Roy Moore!

---

[3] As this Court knows, over the span of one week, the parties filed tit-for-tat motions over the question of whistleblowers versus bank customer secrecy.

[4] Feb. 27, 2003 Ruling, Docket Entry #120, at 1-2. (Emphasis added).

[5] Although Ocwen conveniently left that part out in its motion at bar, the Court's Feb. 27, 2003 reconsidered order had indicated, as it effectively had to, that Hanson was entitled to assert any legitimate objections normally available to any litigant, and Hanson liberally availed himself thereof.

-3-

The truth, for better or for worse, as demonstrated during Hanson's deposition, is that Ocwen simply cannot see anything other than from its tunnel-vision perspective. Ocwen correctly quotes Hanson's email to Attorney Melillo as saying "[w]e have moles within Ocwen who let us know what is going on (and Ocwen has since September 2002 unsuccessfully filed motion upon motion to compel expedited or instanter discovery of our sources but we have fought back fiercely, also giving then zeropointzero)." However, broken down and empirically evaluated, the Melillo email is not at all the "gotcha" Ocwen is salivating or steaming over.

It bears emphasizing that Hanson has *never* shied away from stating that he has had contacts with "moles" *within* Ocwen.[6] Ocwen knows firsthand from open testimony and filings relating to Hanson's improvident sending of the fifty-odd emails to Ocwen's customers, that Hanson claimed to have filed "proofs" under seal with this Court. This Court in its wisdom ruled that vis-a-vis records submitted for *in camera* inspection, it would not substantively consider them, yet nevertheless kept them sealed.[7]

---

[6] That was what the whole bloody battle over the whistleblower protection-versus-bank secrecy skirmish was about!

[7] The Court was, and remains, free to unseal the records at any time, at which juncture Defendants can voraciously view the *publicly released* records and recoup from them what they will. Presumably, if there was no *bona fide* reason for the Court to seal the records, it would not engage in what would otherwise amount to an exercise in futility. It would have unsealed the records, not for Ocwen's access alone, but the world at large's.

Consider *seriatim*, statements in Hanson's email to Attorney Melillo. Claim No. 1: "We have moles within Ocwen who let us know what is going on." This was an empirically true statement at the time Hanson made it. Hanson had "inside" information from persons *not necessarily—indeed categorically not*—Ocwen employees. If this is true, then how did Hanson violate a court order to "provide [Ocwen] with the names of any current or former Ocwen employees that have turned over any Ocwen customer information."?[8]

Claim No. 2: "Ocwen has since September 2002 unsuccessfully filed motion after motion to compel expedited or instanter discovery of our sources but we have fought back fiercely." The Court record attests to Ocwen's prior—and continuing—efforts to discover the source(s) and equally documents Plaintiffs' spirited firefight to prevent such disclosures. What is *false* about that?[9]

Claim No. 3: "[Plaintiffs have] also given [Ocwen] zeropointzero." If Plaintiffs had rolled over and given Ocwen everything Ocwen has requested in its poorly-worded discovery, would there be any outstanding motions to compel filed by Ocwen?

---

[8] Assuming *arguendo* that it was a Moss Codilis worker or an independent contractor or a Boles Law Firm worker who sent Hanson records? Was that encompassed by the Court's *very specific*, narrowly-tailored, order of Feb. 27, 2003? Of course not, wishful thinking by Ocwen to the contrary notwithstanding!

[9] Using a crude illustration, is it a false claim by Coalition forces that Iraqi terrorists have tried time after time to crush them but that they keep fighting back just as fiercely?

The rhetorical response to that query proves Plaintiffs' point: there has been no contempt of court. *Ocwen* failed to define "who" or "what" constitutes an Ocwen employee,[10] despite Plaintiffs' incessant importuning. Plaintiffs in a discovery duel are not required to breach basic "do not volunteer" rules, or to *guess* who is an Ocwen employee and who is not. Plus, Plaintiffs have charged that Ocwen itself had an incestuous relationship with Moss Codilis workers so that the lines between the two were as blurry as the distinction between the lines on Tweedledum and Tweedledee's plaid pants.[11] Supposing a Moss Codilis worker sent the information, did Ocwen's relinquishing of records to a non-lawyer entity[12] constitute a waiver of information whose "security and confidentiality" this Court found to be "urgent"? Arguably!

---

[10] Moss Codilis likewise failed to do the same, and suffers similar consequences, Plaintiffs being no pushovers.

[11] For example, Rosely Torres, whom Hanson believed *until October 1, 2002* to be an Ocwen worker, was identified in a letter by Ocwen Senior Vice President and General Counsel Paul Koches to be a Moss Codilis employee. *See* Docket Entry #74, Exhibit A. *Cf.* Exhibit 1 at bar. Rosely Torres herself hinted that she was a Moss Codilis worker in an Affidavit about her retaliatory firing. *See* Docket Entry #74, Exhibit B. *Cf.* Exhibit 2 at bar.

[12] Plaintiffs have queried major bar associations and lawyer registration entities; so far, *none* have a law firm on record by the name of Moss Codilis Stawiarski Morris Schneider & Prior, LLP. Yet, its defense lawyers maintain to this Court that Moss Codilis is a real law firm, since cardinal defenses hinge on that bogus contention. Moss Codilis is not even a registered law firm in its home state of Colorado! Plaintiffs are painstakingly preparing poignant Rule 11 papers to be served on its counsel. A show cause motion may be in the offing on that matter as well.

No *current or former Ocwen employees* turned over to Hanson any *customer* information, so Hanson could not disclose the names of "such employees." No *Ocwen employees* turned over *customer* documents to Hanson, so again Hanson (conservatively construing the Court's 2/27/03 order which was silent about pseudonymous or anonymous contacts) did not produce such documents to Ocwen.

Plus, Ocwen elects to focus this Court's eyes on only one portion of this yet again controversial email, and ask the Court to accept it as proof positive of Hanson's disobedience of a direct Court order. Implicit in the leap of faith that Ocwen is asking this Court to make is that the contents of the email—Hanson' statements therein—are absolutely true. Well, Hanson also stated to Attorney Melillo that "Ocwen has systematically raped THOUSANDS of consumers." Does Ocwen want this Court to accept that also as final fact?[13] Ocwen accused Hanson of bragging that Plaintiffs gave Ocwen zeropointzero (even if Ocwen got 2,070 pages). However, Hanson also self-taunted in that email that "Ocwen uses scorched earth tactics against ANYONE who confronts them. So far [Ocwen has] produced ZEROPOINTZERO by way of requests for production, admissions and interrogatories. [B]e prepared for Armageddon if you take on these titan thieves."

---

[13] Or was Ocwen's main motive more malignant: inviting the Court's bias by subtly reminding that *Plaintiffs* futilely filed for recusal over the Court's previous Day, Berry & Howard nexus? If pandering was Ocwen's objective, new strategies are in order!

Plaintiffs have steadfastly maintained for months that Ocwen is an entity at whose centrifugal core is consummate fraud. Plaintiffs have stated, in undiluted terms, that Ocwen is a financial terrorist. This sounds like the vitriolic and invective accusations of embarrassingly emotional litigants. Yet, the truth is that regrettably reality recapitulates rhetoric; words cannot capture Ocwen's parasitic nature.[14] The plain proof that Ocwen is a fraud in search of punishment is palpable even in *braille*.

Plaintiffs have persisted in this litigation even as Ocwen has resisted discovery, doctored discovery, redacted discovery under false pretenses,[15] and otherwise filed frivolous protective orders. Plaintiffs attach for the Court's perusal one such instance where someone in Ocwen's high-powered legal camp redacted documents on the basis of bogus, preposterous privilege.

Exhibit 3 is an authentic, unredacted record relating to Hanson's loan. Exhibit 4 is Ocwen's *cleverly redacted version* of the same document. Red faces aside, it becomes unequivocally clear upon close scrutiny that what has really happened is that Ocwen has engaged once again in deceit right in the Court's face.

---

[14] The only distinction between terroristic activities of Al Qaeda and those of Ocwen and its cohorts is that while one would detonate a nuclear or car bomb that destroys buildings, Ocwen detonates a neutron-like financial fraud that destroys consumers and leaves their property intact for misappropriation!

[15] *See* Exhibit 3. The contentions raised by this a comparative analysis of Exhibits 3 and 4 are discussed *infra*.

-8-

Undoubtedly, Ocwen reached into its record repository and retrieved selected records relating to Hanson's loan. Guessing *wrongly* that Plaintiffs could not possibly have had in their possession the legitimate records, Ocwen (or someone acting at its behest) sat down and painstakingly redacted all incriminating entries in the document. For example, where Malaika Carter, Esq., Ocwen's Assistant General Counsel had had involvement on Hanson's loan which could subject her to being deposed or called as a trial witness under the fraud exception to the attorney-client privilege, that was redacted. So were all references to Moss Codilis. Moreover, glaringly on Exhibit 3, page 3, at the entry for 02/27/2002 it says in black and white: "Spoke with: f pabst[16] Event or action which prompted Follow Up: Outcome or Update: *emailed atty to stop fc due to fc should not have been initiated as per f pabst.*"[17] (Emphasis added). Above that entry, on 03/01/02, Stephanie Carson, *ostensibly a Moss Codilis* employee, notes: " Moss Codilis LETTER (NO DIPUTE [*sic*]) TO TRACK NON DISPUTE LETTERS; *loan no longer in demand* . . . will forward letter to Ocwen . . . src/moss." (Emphasis added).

---

[16] "F Pabst" stands for "Frank Pabst", a member of Ocwen's senior management who also doubles as a Moss Codilis foreclosure supervisor. "FC" means "foreclosure" in Ocwen's lingo.

[17] *Why* should foreclosure <u>not</u> have been initiated? More importantly why was the loan no longer in demand? <u>And, most importantly *why did Ocwen* attempt to conceal such entries by redacting them from discovery documents tendered to Plaintiffs</u>?

-9-

Exhibit 3 is but <u>one</u> example Plaintiffs have of the feckless fraud being perpetrated upon homeowners and Courts nationwide by Ocwen with the connivance of Moss Codilis. Plaintiffs have always asserted that they have palpable proof that Ocwen has been foreclosing illegally on homes and only when a homeowner fights back with realistic counter-threats of lawsuits does Ocwen stop the vicious victimization, and even then it thereafter in litigation tries to cover its torrid tracks with the acquiescence of "inside" or "outside" legal counsel who, commensurate with their attorney's oaths, ought to know a whole lot better.[18]

In addition, because Ocwen's own lawyers conceded during a discovery dispute resolution conference that Ocwen's propounded interrogatories and production requests were arguably ambiguous, and vaguely or overbroadly worded, *and that they would serve supplemental or revised definitions on Plaintiffs' counsel which they never did*, the motion is tendered in as patent bad faith as is possible.[19] In essence it is a quintessentially quixotic quest!

---

[18] Plaintiffs challenge whoever did the redactions on Ocwen's behalf to step forward and identify a single legitimate ground of privilege for having redacted those portions of Exhibit 3 that they did, or explain why they did so. No attorney-client, attorney-work product or trade secret protections are implicated, and it is nothing but sheer fraud that induced Ocwen to redact those entries. And, lest Ocwen keep up its defiant denials, Plaintiffs hold many more "smoking guns" in dispersed locations!

[19] Ocwen the oligarchy has flouted Sarbanes-Oxley's anti-shredding proscriptions; fired whistleblowers while assuring this Court to the contrary; tried to tamper with Hanson's technology;

-10-

It is now incumbent upon this Court, which invited Hanson to explain his rationale for sending 50-odd emails to Ocwen's customers last Fall, to act fair-and-balanced to deftly demand that Ocwen openly explain its rogue redactions as well. The administration of justice risks loss of legitimacy unless it *acts now in the face of brazen fraud to punish whoever is implicated, no matter how lofty that person's paycheck.* This Court can, *suo motu*, revisit Plaintiffs' *ex parte* papers, vacate its decision to disregard them, and ultimately unseal and consider those items as it decides what sanctions to slap on Ocwen for fooling around with everyone and wasting Plaintiffs' resources time and again. Unless Ocwen particularly, and Defendants in general, realize the potency of Plaintiffs' case, they will wallow in self-delusion.[20]

In the final, factual, analysis, citation of a hearsay email as the underpinning of Ocwen's motion for order to show cause is too slender a reed upon which to hang its laurel of victory, because Hanson has not inadvertently (let alone wilfully) defied any order of this Court. Ocwen's contrary claim is classic chaff!

---

ridiculed regulators; converted consumer cash; destroyed dreams; and basically made an massive mockery of justice.

[20] Local counsel for Defendants are acutely aware that in the course of Connecticut's celebrated Ganim, Giordani and Sylvestre scandals, corrupt companies, corporate counsel, private practitioners and previously powerful politicians have been prosecuted in the District of Connecticut for personal or financial fraud. *Nobody is above the law in a system of government of the people, for the people by the people.* Nobody!

While seemingly standing still, this case has inexorably inched forward, with various victims coming forward *daily*![21] Mercifully, Plaintiffs are now apparently approaching their proverbial day in Court, when Ocwen's pompous posturing can be prudently put to judicial scrutiny.[22] For the foregoing and other reasons as may be orally argued, Plaintiffs ask the Court to deny Ocwen's meritless motion, and make it pay Plaintiffs' legal fees and costs.[23] Only by teaching Ocwen that toddler tomfoolery is not for Connecticut consumer class action court cases, will dilatory motions cease and the controversy fully focus on feckless fraud.

Respectfully submitted,

Paul M. Ngobeni (#ct08187)
Law Offices of Paul Ngobeni
914 Main Street, Suite 206
East Hartford, CT 06108
Telephone: (860) 289-3155
Facsimile: (860) 282-7479

---

[21] Plaintiffs have received records from anonymous and/or pseudonymous persons. Using amanuensis, consumers clamoring against institutional inertia have mailed material to Plaintiffs who, being under no such duty, do not pause to investigate whether the sender—if identifiable—is an Ocwen employee or not. Hanson, after October 1, *2002*, cleared his head of any belief as to who was or was not an Ocwen worker. Only Ocwen truly knows!

[22] In fact, starting on November 4, 2003 Plaintiffs began meticulously preparing for hearings on class certification and preliminary injunction and the motions to dismiss, but learned lately from the corrected Court docket that no major matters, but only discovery disputes, are up for argument on 11/24/03.

[23] Upon being granted leave by the Court, Plaintiffs will submit their billable hours incurred to oppose the motion at bar.

CERTIFICATION

A copy of Plaintiffs' **Objection to Defendants' Motion for Order to Show Cause** was served on November 17, 2003 by 1st class mail, postage prepaid, on counsel of record and the *pro se* party:

Steven M. Greenspan, Esq.
David M. Bizar, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499
(860) 275-0100  Fax (860) 275-0343

Matthew Budzik, Esq.
Francis J. Brady, Esq.
Murtha Cullina LLP
CityPlace I, 185 Asylum Street
Hartford, CT 06103
(860) 240-6000  Fax (860) 240-6150

Basil S. Shiber, Esq.
Richard G. Carlston, Esq.
Miller, Starr & Regalia
1331 N. California Blvd. 5th Floor
P. O. Box 8177
Walnut Creek, CA 94596
(925) 935-9400

Theodore R. Scarborough, Esq.
Sidely, Austin, Brown & Wood
Attorneys at Law
Bank One Plaza
Chicago, IL 60603
(312) 853-7036  Fax (312) 853-2236

Luigi Spadafora, Esq.
Peter R. Stark, Esq.
Winget, Spadafora & Schwartzberg
45 Broadway, 19th Floor
New York, NY 10006
(212) 221-6900  Fax (212) 221-6989

Kweku J. Hanson, Esq. (*Pro Se*)
Law Offices of Kweku J. Hanson
487 Main Street, Suite Two
Hartford, CT 06103-3007
(860) 728-5454  Fax (860) 548-9660

_____
**Paul M. Ngobeni, Esq.**