IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KWEKU HANSON<br>individually and on behalf of<br>all others similarly situated<br>                    Plaintiffs<br><br>              v.<br><br>OCWEN FEDERAL BANK, ET. AL.<br>                    Defendants | DOCKET #3:02CV960 (CFD)<br><br><br><br><br><br>AUGUST 22, 2003 |

MEMORANDUM IN SUPPORT OF MOTION TO COMPEL OCWEN DEFENDANTS'
FULL COMPLIANCE WITH PLAINTIFFS' FIRST REQUEST FOR PRODUCTION

Pursuant to Fed.R.Civ.P. 37(a), and D.Conn.L.Civ.R. 7, Plaintiffs submit this Memorandum in Support of Plaintiffs' Motion to Compel. Plaintiffs allege that Ocwen have denied Plaintiffs meaningful discovery, so that Court intervention is now required to ensure integrity in the search for truth.

A.    Factual Background:

On April 1, 2003 Plaintiffs served their First Interrogatories and Requests for Production on the Ocwen [Exhibit 1].[1] On May 5, 2003 Ocwen responded to said discovery. In that initial response, since supplemented, Ocwen interposed General Objections which they incorporated into each of the responses.

For starters, Ocwen took the outrageous and legally unsound position that since the caption of the motion mentioned "Ocwen Federal Bank FSB" alone, the discovery requests did not pertain to its sister defendants Ocwen Financial or Erbey. Of course, it is an elementary proposition that discovery propounded to a corporate entity encompasses all its parents, officers and subsidiaries.

- 1 -

The Clerk shall docket this Plaintiffs' Memorandum in Support of Motion to Compel and include it in the Court's file. So ordered.

Christopher F. Droney
United States District Judge
12/ 3 /03

The General Objections were that the interrogatories allegedly: Were compound, and exceeded 25 in number contrary to Fed. R. Civ. P. 33 (a); Called for the disclosure of information subject to the attorney-client privilege, work product protection, or any other privilege or protection recognized by applicable federal or state law; Called, in their 'Definitions and Instructions' section, for information neither relevant to the subject matter of this action nor reasonably calculated to lead to the discovery of admissible evidence, or called for information not required to be disclosed pursuant to Fed. R. Civ. P. 26 and 33; Were premature, overly broad, unduly burdensome, designed to harass Ocwen and/or would require undue expense to answer; Were vague, ambiguous, incomprehensible, and/or non-answerable because of undefined or ill-defined terms or incorrect factual assumptions; and, Sought legal conclusions and/or ultimate factual determinations.

Ocwen further generally objected that the interrogatories: Sought to define terms and/or characterize the evidence in this matter; Sought the disclosure of trade secrets or other confidential or proprietary business information in the absence of an appropriate protective order; Sought information not in Ocwen' possession, custody, or control or information not belonging to Ocwen; Were not limited in time and therefore were overly broad, oppressive and unduly burdensome.

-2-

Ocwen further objected on the basis that the interrogatories: Were, in their 'Definitions and Instructions' section overly broad, unduly burdensome, vague, ambiguous, and/or designed to harass Ocwen because they failed to define "Defendant" and "Ocwen;" and, failed to clarify Ocwen against whom Plaintiffs were asserting claims. Accordingly, Ocwen arrogated to themselves the right to furnish responsive information solely from Ocwen.[2]

After painting a swash-buckling swath of objections across the discovery landscape,[3] and asserting that the interrogatory sought information not in Ocwen' possession, custody or control, Ocwen "responded" to Interrogatory No. 1, which asked Ocwen to state how many mortgage loans it services in the U.S. and how many of those were in foreclosure status on April 1, 2003. Ocwen objected on grounds of over breath and irrelevance.

_____

[2]    *Cf.* Founding Church of Scientology of Washington, D.C., Inc. v. Director, F.B.I., 27 F. R. Serv. 2d 601 (D.D.C. 1979) (Although plaintiff could not impose obligation on defendant to employ plaintiff's language, defendant should have recognized plaintiff's definitions in determining the scope and nature of the interrogatories. Accordingly, the court would sustain plaintiffs' objection to defendant's failure to use the definitions propounded by plaintiff in answering plaintiff's interrogatories). *See also* Gould v. Lumonics Research Ltd., 33 F. R. Serv. 2d 1257 (N.D. Ill. 1982) (Defendant could not evade meaningful and complete discovery by claiming it was confused by plaintiff's definition of certain terms).

[3]    Ocwen invoked its General Objection as a preface to run-of-the-mill objections.

- 3 -

Playing a game of cat-and-mouse, Ocwen also deliberately failed to properly respond to Interrogatory No. 2, asking about Ocwen's permissive use of Moss Codilis letterheads to generate debt collection letters. Ocwen asserted that this Interrogatory exceeded the scope of the February 23, 2003 and April 29, 2003 Scheduling Orders.

Interrogatory No. 3 asked Ocwen to state "the number of allegedly defaulted loans referred to Moss Codilis for debt collection since April 1, 1997." Ocwen demurred, interposing its classic, trite, "overbroad, irrelevant" grounds.[4] Ocwen threw in for good measure that it had the right to assert other objections when such discovery was timely. In flagrant violation of D.Conn.L.Civ.R. 7, Ocwen failed to specify which portions of Interrogatory No. 2 were objectionable.

Ocwen's responses to each and every one of the remaining twenty-two Interrogatories similarly consisted of a hybrid of one of the compound Objections interposed against Interrogatories 1 through 3.[5] This subterfuge violated the Rules.

---

[4]    To avoid repetition, Ocwen' recurring, boilerplate objections, which prefaced responses to *each* interrogatory, are referred to as "Footnote 3 objections."

[5]    Occassionally, Ocwen invoked the "burdensomeness" rule, as vis-a-vis Interrogatories 9 and 10, which inquired into Ocwen's foreclosure actions and bankruptcy petitions involving Ocwen between August 22, 1997 and April 1, 2003 in which the borrower or prevailed or Ocwen dismissed the foreclosure or withdrew its objection to the bankruptcy.

-4-

Compounding its flagrant violation of the Rules, Ocwen neglected, despite being instructed by Interrogatory 13 so to do, to describe all persons involved in the servicing of Hanson's loan from August 22, 1997 through April 1, 2003. Ocwen instead promised to produce its loan file and notes for Hanson's mortgage loan, *which it has defiantly failed to do.*[6]

Plaintiffs have previously argued demonstrably to this Court in their Objection to Ocwen's Motion for Protective Order, that Ocwen cannot truthfully answer the majority of discovery requests interposed by Plaintiffs.[7] Ocwen continues to stall for time, hoping that this Court will dismiss Plaintiffs Amended Complaint *without leave to replead,* so that Ocwen will escape the judgment so richly deserved for the national nightmare it has created.

---

[6]     Ocwen added disingenuously that "to the extent the notes do not reflect full names of employees, Ocwen is willing to work with plaintiff and respond to reasonable requests for additional information regarding names identified in Hanson's loan file." *See also* Ocwen's responses to Interrogatories 23 and 24. This burden-shifting nonsense of the uttermost degree is the sort of verbiage submitted is supposed seriousness by Ocwen's highly experienced lawyers, and not only requires a judicial tongue-lashing, but also meaningful monetary sanctions.

[7]     Plaintiffs have submitted in excess of 800 pages of exhibits consisting of public records primarily from the FTC, involving hundreds of complaints by victims of Ocwen's larcenous loan servicing practices. Plaintiffs have also previously filed scores of Affidavits by Ocwen borrowers, each unrebutted statement swearing that Ocwen is willfully mismanaging borrower funds. While the Court has not seen it fit to address, *sua sponte,* the sorry saga of such scandalous kleptomania, it behooves the Court to force Ocwen to comply with discovery rules.

B.    Applicable Law:

As a threshold matter, Plaintiffs alert the Court to the fact that Ocwen failed to comply with Fed.R.Civ.P. 33's requirement that objections to interrogatories be served with notice of a court hearing. Additionally, Ocwen did not seek a Fed.R.Civ.P. 26(c) Protective Order regarding all interrogatories objected to.[8]  Ocwen also breached a cardinal rule of interrogatories that "a party is not permitted to incorporate by reference its answers to other interrogatories where the answers are not otherwise complete in themselves and the references do not make it possible to determine without an elaborate comparison of answers whether an adequate answer has been provided."[9]

I.    Ocwen Was Obligated To Poll All Subsidiaries Before Answering Plaintiffs' First Interrogatories.

It is a fundamental rule of civil discovery that under Fed.R.Civ.P. 33(a) and 34, a corporation responding to interrogatories has the duty to inquire of appropriate employees before submitting its answers. A corporation's answers must speak

---

[8]    Ocwen did file a pending, objected-to, Motion for Protective Order seeking shelter from its obligation to answer Plaintiffs' First Request for Admissions.

[9]    Dowzer v. Boston & Maine Corp., 36 F. r. Serv. 2d 1026 (D. Mass. 1983); Accord, Ferrara v. Balistreri & DiMaio, Inc., 2 F. R. Serv. 3d 333, 105 F.R.D. 147 (D. Mass. 1985). See also Gould v. Lumonics Research Ltd., 33 F. R. Serv. 2d 1257 (N.D. Ill. 1982) (Answers to an interrogatory referring plaintiff to answer to another interrogatory is improper and insufficient).

as the composite knowledge of the party and include facts and knowledge of its agents and any person under its control. The rationale underlying corporate responsibility to respond to interrogatories is obvious: in a large corporation, no single official is likely to have knowledge of the affairs of the entire corporate body. <u>Zenith Radio Corp. v. Matsushita Elec. Industrial Co., Ltd.</u>, 505 F. Supp. 1190 (E.D. Pa. 1980).

Ocwen Financial Services, Inc. ("Ocwen Financial"), parent of Ocwen Federal Bank ("Ocwen"), and one of the nation's largest mortgage servicing entities, with annual revenues in the billions of dollars, is precisely the type of corporate behemoth federal courts had in mind when opining that a corporate officer responding to interrogatories must diligently poll key employees for *all* relevant information. Ocwen is an operating subsidiary of Ocwen Financial, and both are defendants, and together with Erbey, were properly interrogated.

Implicit in Ocwen's sworn answers to Plaintiffs' interrogatories that all (corporate Ocwen's) global records had in effect been searched for information responsive to Plaintiffs' requests, excepting information for which a particularized privilege was properly asserted.[10] However, as explained above, this fundamentally implied attestation was not at all valid here.

_____

[10]    The Discovery Responses were signed by Theodore Scarborough, Esq., of Sidely Austin Brown Wood, Ocwen's counsel.

-7-

A corporation must furnish information in the possession of a so-called sister corporation, another subsidiary of the non-party parent corporation of the party to the action. Haddock & Herr, *Discovery Practice* (Third Ed. 1996). Case law from around the country provides guidance here. See, for example, Strom v. American Honda Motor Co., Inc., 667 N.E.2d 1137, 1141-45 (Mass. 1996) (requiring discovery where "information sought is in the possession or custody of a wholly owning parent (or virtually wholly owning) or wholly owned (or virtually wholly owned) subsidiary corporation, or of a corporation affiliated through such a parent or subsidiary . . . . To rule otherwise would be to reward corporations that disperse potentially useful information among related entities."); In re Uranium Antitrust Litigation, 480 F. Supp. 1138, 1153 (Employees of U.S. defendant once had control over the managing director, officer, and employee of the non-party).

Interrogatories are not objectionable simply because they call for information concerning the internal business affairs of subsidiaries of a party who are not themselves parties to an action. If the corporate party can obtain information from sources under its control, it cannot avoid answering interrogatories by pleasing a lack of knowledge. Greenbie v. Noble, 22 F.R. Serv. 470, 18 F.R.D. 414 (S.D.N.Y. 1955). In keeping with this premise, the Supreme Court itself, in

- 8 -

Schlagenhauf v. Holder, 379 U.S. 104 (1964), rejected a contention that a Fed.R.Civ.P. 35 examination could only be had against an "opposing" party as not in keeping "with the aims of a liberal, nontechnical application of the Federal Rules."

Moreover, even if the Court accepts Ocwen' contention that it was justified in furnishing answers only from Ocwen, caselaw within the Second Circuit requires a federal court to analyze whether a parent and subsidiary have worked sufficiently closely in the particular field of endeavor that is the subject of the lawsuit to suggest that the subsidiary could be deemed to have constructive control of the information sought. Ferber v. Sharp Electronics Corp., 40 F. R. Serv. 950 (S.D.N.Y. 1984). In considering whether there exists a sufficiently intimate relationship between a subsidiary corporation and its parent to justify disregarding the formal corporate separation for the limited purpose of civil discovery, Plaintiffs have sufficiently shown by previously filed material above that Ocwen Financial and Ocwen operate more or less "as a single functional unit"; the two corporations are involved in the integrated business operation of subprime lending; the companies hold themselves out to be one integrated business operation; and key corporate officers and directors circulate between the companies.[11]

_____

[11]     See, e.g., Affidavits of Ronald Farris and William Erbey in support of Ocwen' Motion to Dismiss. Mr. Farris'

Any information available to Ocwen Financial and Erbey were unquestionably within the possession, custody, or control of Ocwen and thus producible. Moreover, Ocwen Financial is not only is related to Ocwen via the parent-subsidiary tie; after a case of the minnow swallowing the whale and metamorphosing into the Ocwen Financial, it controls numerous subsidiaries, as bill-boarded at its own website at *www.ocwen.com*. Therefore, even if Ocwen was permitted to assume that the appellation "Ocwen" in Plaintiffs' interrogatories relates only to the named defendant Ocwen, and therefore opted as a practical matter to assume that only Ocwen must respond to discovery requests, Ocwen had a duty to search the files of any related entities (including defendants Ocwen Financial and Erbey) for responsive information and documents and furnish proper answers to the interrogatories.[12]

Ocwen has failed to provide complete, full, and unevasive answers to pinpoint questions about the existence of consumer complaints, loan servicing and debt collection tactics, Hanson's mortgage loan administration, employee hiring and training, and Ocwen's responses were lacking in good faith and due diligence.

---

statement make it clear that Erbey works for Ocwen Financial, and Ocwen's SEC filings make clear that Erbey works for Ocwen.

[12]    The corporate Ocwen evolved through a number of pre-complaint corporate reorganizations, and is now related as parent/subsidiary to Ocwen Financial. Erbey remains at the helm of both of these organized piracies.

II    Interrogatories Were Not Oppressive, But Even If
      Burdensome, Must Be Answered Because Plaintiffs' Need
      For Information Outweighed Ocwen' Inconvenience.

Ocwen has parroted vis-a-vis every interrogatory that it is
burdensome. However, here again, Ocwen misunderstands the law
governing interrogatories. Even assuming *arguendo* that the
questions propounded are burdensome, burdensomeness is not alone
sufficient to excuse a party from answering interrogatories, nor
will the mere number of interrogatories excuse a party. "The
question is not the number of interrogatories, or even that the
interrogating party already possesses the information demanded,
but rather whether or not the demands are unduly oppressive when
viewed in relation to the facts and circumstances of the
particular case." Krantz v. United States, 17 F. R. Serv. 2d 162,
56 F.R.D. 555 (W.D. Va. 1972).[13] Likewise, an interrogatory is not
inherently objectionable on grounds of being overly broad or
unduly burdensome simply because it is unlimited in time and
scope. Hilt v. SFC, Inc., 37 F. R. Serv. 3d 919, 170 F.R.D. 182
(D. Kan. 1997).[14]

_____

[13]    The Comments to Rule 26(a) state plainly that "a
question asking about communications of a particular type should
be treated as a single interrogatory even though it requests that
the time, place, persons present, and contents be stated
separately for each communication." Therefore, there is nothing
presumptively improper about an interrogatory with subparts.

[14]    Hilt was a sexual harassment lawsuit. The Court ordered
the plaintiff to answer the defendant's interrogatory about "all
physicians ever consulted" even though it was unlimited in

-11-

Not even the fact that a defendant might be put to some trouble and expense in responding to a plaintiff's interrogatories is a sufficient ground for objection, where the burden of Ocwen does not outweigh the benefit to Plaintiffs. Federal Deposit Ins. Corp. v. Mercantile Nat. Bank of Chicago, 28 F. R. Serv. 2d 972, 84 F.R.D. 345 (N.D. Ill. 1979).[15] Moreover, Ocwen has been on notice since the passage of FDCPA, FCRA, TILA, RESPA, and RICO that it would be required to substantiate its business practices with reports and records.[16]

_____

scope, and plaintiff provided answers covering five years.

[15]    Plaintiffs have incurred considerable, ongoing, expense to procure hundreds of consumer complaint records involving Ocwen from disparate federal administrative agencies. If *Plaintiffs*, who do not have the type of deep-pockets that Ocwen, Moss Codilis and Litton have by virtue of their larcenous and/or legitimate loan-related work, can afford to procure and produce thousands of pages of records, then it is incumbent on Ocwen to be forced to do even more. It is time for the Court to *make* Ocwen obey the laws of discovery that it has perennially evaded in consumer case after case nationwide. The judicial juggernaut must jolt Ocwen!

[16]    Indeed, sheer numerosity is not a valid basis for objection to interrogatories. Thus, it has been held that a defendant in a breach of contract action could not evade its discovery responsibilities simply by contending that the plaintiff's 57 pages of interrogatories were burdensome, oppressive, or overly broad. Rather, the court held that *the defendant should have submitted, by affidavit or offering evidence revealing the nature of the burden, that each interrogatory was not relevant, or how each question was overly broad, burdensome or oppressive.* Compagnie Francaise D'Assurance Pour Le Commerce Exterieur v. Phillips Petroleum Co., 1 F.R. Serv. 3d 167, 105 F.R.D. 16 (S.D.N.Y. 1984). Since it has not met its burden of explaining its objections by Affidavit and backing same up Ocwen, like Compagnie Francaise, cannot evade discovery.

- 12 -

In an age discrimination case, for example, a court allowed plaintiffs to discover from defendants prior claims of age discrimination possibly filed during the previous four years. While such information ordinarily might have been irrelevant in a discrimination case, the plaintiffs' allegation of a pattern and practice of discrimination was sufficient to warrant issuance of an order compelling discovery. *See* <u>Bumpers v. International Mill Service, Inc.</u>, 40 F. R. Serv. 2d 1334 (E.D. Pa. 1984).

Similarly Plaintiffs, who have asserted a pattern and practice of consumer fraud in loan servicing and debt collection, are entitled to get confirmation from Ocwen what is now an open secret, namely if Ocwen has experienced loan servicing complaints in the past and how they addressed same, even if this allegedly is burdensome for a multibillion dollar company. The information sought is relevant and might be probative of Ocwen' pattern and practice of fraudulent servicing towards borrowers. Moreover, since Plaintiffs' interrogatories on this point seek to elicit such specificity in identifying certain documents rather than a compilation of information, Fed.R.Civ.P. 33(c) is inapplicable. *See* <u>Budget Rent-A-Car of Missouri, Inc. v. Hertz Corp.</u>, 16 F. R. Serv. 2d 720, 55 F.R.D. 354 (W.D. Mo. 1975).

Regarding Ocwen' Claims Of Privilege

Plaintiffs', by separate Memorandum of Law, are rebutting Ocwen' exaggerated or bogus claims to privilege under the attorney-client, work-product, and trade secret doctrines. Suffice to say that even assuming arguendo that Ocwen had valid claims to assert any such privileges, they waived same by failing to submit a privilege log to the Court as required by Conn. Civ. L. R. 7(d), and clear Second Circuit admonition.[17]

C.    Conclusion

Ocwen' repeated, identical invocations of Fed.R.Civ.P. 33(c) in lieu of answering Plaintiffs' interrogatories are improper since they violate both the "specificity" and "burdensomeness" requirements of the Rule. Moreover, if Ocwen wished to claim a privilege with respect to Plaintiffs' documents requests, they were obliged to answer the interrogatories in the traditional manner. In the final analysis, Ocwen' failure to respond by compliance in a timely fashion to Plaintiffs' interrogatories operates as a waiver to any objections, other than based on valid privilege, to the interrogatories served on Ocwen. Jayne H. Lee, Inc. v. Flagstaff Indus. Corp., 38 F. R. Serv. 3d 1347, 173 F.R.D. 651 (D. Md. 1977).[18]

---

[17]    See Plaintiffs' Motion to Compel Document Production.

[18]    It is useful to reiterate that Ocwen responded to Plaintiffs' April 1, 2003 Interrogatories on May 5, 2003.

In light of the foregoing, the Court should disallow all alleged claims of privilege, whether attorney-client or work product, with respect to each of Ocwen' responses and order Ocwen to furnish complete answers to said interrogatories directly to Plaintiffs within ten days. In re Master Key Antitrust Litigation, 15 F. R. Serv. 2d 742, 53 F.R.D. 87 (D. Conn. 1971). Moreover, the Court should order that a senior corporate officer of Ocwen (and not Theodore Scarborough, Esq.), personally answer and sign the interrogatories under oath pursuant to Fed.R.Civ.P. 37(b). See McDougall v. Dunn, 16 F.R. Serv. 2d 609, 468 F.2d 468 (4th Cir. 1972). Ocwen must also be made to pay any costs, and expenses and attorney's fees incurred by Plaintiffs to litigate the issue of Ocwen discovery abuses. Justice demands no less!

Respectfully submitted,

Paul M. Ngobeni (#ct08187)
Law Offices of Paul Ngobeni
914 Main Street, Suite 206
East Hartford, CT 06108
Telephone: (860) 289-3155
Facsimile: (860) 282-7479
Email: ngobenilaw@aol.com

## CERTIFICATION

A copy of the foregoing Plaintiffs' **Memorandum of Law in Support Motion to    Motion to Compel Ocwen Defendants' Full Compliance with Plaintiffs' First Interrogatories and Production Requests** was served on August ⟨25⟩ , 2003 by first-class mail, postage prepaid, on all counsel of record, and the *pro se* party:

Steven M. Greenspan, Esq.
David M. Bizar, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499
(860) 275-0100 Fax (860) 275-0343

Matthew Budzik, Esq.
Francis J. Brady, Esq.
Murtha Cullina LLP
CityPlace I, 185 Asylum Street
Hartford, CT 06103
(860) 240-6000 Fax (860) 240-6150

Basil S. Shiber, Esq.
Richard G. Carlston, Esq.
Miller, Starr & Regalia
1331 N. California Blvd. 5th Floor
P. O. Box 8177
Walnut Creek, CA 94596
(925) 935-9400

Theodore R. Scarborough, Esq.
Sidely, Austin, Brown & Wood
Attorneys at Law
Bank One Plaza
Chicago, IL 60603
(312) 853-7036 Fax (312) 853-2236

Luigi Spadafora, Esq.
Peter R. Stark, Esq.
Winget, Spadafora & Schwartzberg
45 Broadway, 19th Floor
New York, NY 10006
(212) 221-6900 Fax (212) 221-6989

Kweku J. Hanson, Esq. (*Pro Se*)
Law Offices of Kweku J. Hanson
487 Main Street, Suite Two
Hartford, CT 06103-3007
(860) 728-5454 Fax (860) 548-9660

_____
**Paul M. Ngobeni, Esq.**

- 16 -