UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KWEKU HANSON ) | No. 3:02-CV-960(CFD) |
| individually and on behalf of ) | |
| all others similarly situated ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| OCWEN FEDERAL BANK, et al. ) | |
|     Defendants. ) | |
| ) | FEBRUARY 12, 2004 |

<u>PLAINTIFFS' REPLY TO OCWEN'S RESPONSE TO PLAINTIFF'S STATEMENT IN SUPPORT OF IMMEDIATE HEARING ON PRELIMINANRY INJUNCTION</u>

During the course of the 19-month pendency of this putative class action litigation, it has become sadly apparent to Plaintiffs that Ocwen, that Johnny Appleseed of loan servicing fraud (and its coterie of defendants who constitute Fraud Central), has absolutely no intention of ever acknowledging the enormous destruction it has wrought on American homeowners nationwide. It has become even more apparent that despite their strenuous strides to be heard in open court to expose the feckless fraud, Plaintiffs have yet to *approach, much less arrive at*, the Halls of Justice.

    ORAL ARGUMENT IS NOT REQUESTED

    TESTIMONY WILL NOT BE REQUIRED

- 1 -

Plaintiffs have submitted, during the past eighteen months, unassailable documentary evidence (some of it from persons who were on defendants' payroll) of dastardly fraud verging on criminal misconduct. Plaintiffs have copiously complained of Ocwen's deft defiance of judicial rulings regarding discovery even as it accelerates its quest to victimize persons whose only fault is that they sought to own a piece of the American Dream.

In view of Plaintiffs' counsel's stipulation in February, 2003 to defer adjudication of Plaintiffs' Amended Preliminary Injunction motion until after certification of the class, this Court in November, 2003 asked Plaintiffs to provide *some evidence* of the statements which would justify an immediate hearing prior to class certification. Plaintiffs, already acutely aware that the pleadings and exhibits combined in this litigation stand over three feet tall when stacked, provided merely a sample of the evidence in their repertoire pointing to Ocwen's ongoing fraud, and the clear and present danger it presents to homeowners nationwide, saving the remainder for presentation at the hearing on preliminary injunction.[1] Plaintiffs stated to this Court that they were prepared to supplement their examplars on request.

---

[1] For good measure, indicia of Litton's fraudulent loan servicing practices was also thrown in.

- 2 -

It is a *non sequitur* that simply because Ocwen allegedly stopped servicing Hanson's loan in April, 2002 Hanson cannot show irreparable harm. Hanson has stated in pleadings, and is prepared to testify under oath, that he continues to suffer irreparable harm in the form of denial of consumer credit, and assessment of inflated interest charges by Litton based on Ocwen's false accounting. Hanson has no adequate remedy at law at this time for such continuing damage. Above all, Plaintiffs are fully prepared to prove by a preponderance of evidence that they are likely to succeed on the merits of their stalemated suit against Ocwen.

As touching the issue of Hanson's ability to seek an injunction which would effectively amount to a classwide injunction ahead of the certification of a class, Ocwen's argument is disingenuous. This Court's own rulings in <u>Karen L. v. Physicians Health Services, Inc.</u>, No. 3:99Cv2244 (D. Conn. 2001), and <u>Wilson-Coker v. Shalala</u>, No. 3:00Cv1312 (D.Conn 2001) prove that preliminary injunctions which have the effect of protecting putative classmembers prior to certification, are not unusual. What Ocwen wants from this Court is a continuing license to continue stealing significant sums from mortgagors, even as it faces class action lawsuits sprouting against it across America.

- 3 -

Ocwen invokes a statistic (Ocwen's Response, p.5) that "plaintiff's new set of documents reflect the apparent dissatisfaction of less than 1/100th of 1 percent of all current Ocwen customers." What Ocwen fails to inform this Court about is that Ocwen is in receipt of discovery from Plaintiffs which includes at least 3,000 emails from extremely dissatisfied Ocwen customers urgently asking to be included in the class action lawsuit at bar. This is on top of the 52,000 pages of complaints against Ocwen at HUD and the 750 pages of FTC complaints against Ocwen previously filed with this Court as one of Plaintiffs' exhibits. This is on top of Ocwen's being found to have engaged in fraud and having had to pay $10.5 million in <u>Holmes v. Ocwen Financial Corp.</u>. This is over and above case after case in the federal bankruptcy courts disallowing Ocwen's motion for stay from relief wherein federal bankruptcy judges have found that the borrower seeking refuge in bankruptcy indeed made payments to Ocwen which were not credited. This is in addition to state court opinions from Alabama to Hawaii finding that Ocwen overcharged consumers thousands of dollars.[2]

---

[2] The refrain by mortgagors is always the same: Ocwen is overcharging each borrower thousands of dollars. The reaction by Ocwen is always the same: who, *us?* The response by the courts is predictable: "one isolated, injured borrower does not a class

Plaintiff submitted emails from borrowers who have already submitted sworn statements; to ask such borrowers to submit sworn statements again when they are ready to come up in person to testify and be tested by Ocwen's battery of defense lawyers, is ridiculous. Plaintiffs have done virtually everything practical, short of seeking a Second Circuit mandamus, to get this Court to schedule an immediate hearing on their request for a preliminary injunction.[3] Meantime, Ocwen obfuscates, submits knowingly false, *yes*, empirically demonstrable <u>knowingly false</u>, sworn responses to Plaintiffs' Request for Admissions,[4] and continues business as usual, which is the use of illegal documents to foment fraudulent foreclosures. How long can any consumer countenance this conduct?

---

action make." So the ravishing goes on . . . and on . . . and on!

[3] Neither Hanson (when acting as a lawyer) nor Plaintiffs' counsel are strangers to federal injunctive relief, having on unrelated occasions secured TROs and/or preliminary injunctions. The Second Circuit's jurisprudential standard for obtaining a *court hearing* on a request for preliminary injunction has never been the impossibility standard Ocwen would have this Court foist upon Plaintiffs.

[4] By separate motion under draft Plaintiffs (extremely distressed by this Court's inattention to their mysteriously segregated, as yet unadjudicated, motion to compel [Docket No. 209]), will shortly move for severe sanctions against Ocwen for knowingly supplying false, sworn answers, and ask that this Court *act* to address Ocwen's falsehood forthwith. Given this Court's ruling compelling Ocwen's compliance with discovery, Plaintiffs are need not engage in mindless meet-and-confers *ad nauseam*.

Plaintiffs previously attempted to get this Court to urgently hear their "emergency motion" to disqualify Ocwen's legal team, but despite their written affirmations two months ago, they are no closer to resolution of their extremely serious charges of a fraud being foisted upon the court than when they first filed same. This *status quo* situation is untenably unfair!

If the Court desires that Plaintiffs proffer over 200 sworn statements by Ocwen victims and submit over 3,000 email complaints about Ocwen *prior to* this Court scheduling a hearing on Docket No. 11 and ordering an exchange of evidence among the parties, then the Court needs to so order. If, conversely, this Court feels that Plaintiffs' election one year ago to defer a hearing on the preliminary injunction until class certification had been decided, is an election set in stone, then the Court needs to so rule.[5] For reasons entirely baffling to Plaintiffs, class action suits filed against Ocwen two months ago in more docket-congested federal districts, *appear* be on a faster track towards being considered on their merits than the case at bar.

---

[5] Plaintiffs made their election at a time when they had just filed their class certification motion and brief and expected same to be heard expeditiously, and certainly did not anticipate that the "as soon as practical" directive of Rule 23 could reasonably be construed to mean "in excess of one year."

Respectfully submitted,

_____
Paul M. Ngobeni (#ct08187)
Law Offices of Paul Ngobeni
914 Main Street, Suite 206
East Hartford, CT 06108
Telephone: (860) 289-3155
Facsimile: (860) 282-7479

<u>CERTIFICATION</u>

A copy of Plaintiffs' **Reply to Ocwen's Response to Plaintiff's Statement in Support of Immediate Hearing on Preliminary Injunction** was mailed February _____, 2004, postage prepaid, to counsel and *pro se* parties of record:

Steven M. Greenspan, Esq.
David M. Bizar, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, CT 06103-3499
(860) 275-0100 Fax (860) 275-0343

Matthew Budzik, Esq.
Francis J. Brady, Esq.
Murtha Cullina LLP
CityPlace I, 185 Asylum Street
Hartford, CT 06103
(860) 240-6000 Fax (860) 240-6150

Basil S. Shiber, Esq.
Richard G. Carlston, Esq.
Miller, Starr & Regalia
1331 N. California Blvd. 5th Floor
P. O. Box 8177
Walnut Creek, CA 94596
(925) 935-9400

Theodore R. Scarborough, Esq..
John Van De Weert, Esq.
Sidely, Austin, Brown & Wood
Attorneys at Law
Bank One Plaza
Chicago, IL 60603
(312) 853-7036 Fax (312) 853-2236

Luigi Spadafora, Esq.
Peter R. Stark, Esq.
Winget, Spadafora & Schwartzberg
45 Broadway, 19th Floor
New York, NY 10006
(212) 221-6900 Fax (212) 221-6989

Kweku J. Hanson, Esq. (*Pro Se*)
Law Offices of Kweku J. Hanson
487 Main Street, Suite Two
Hartford, CT 06103-3007
(860) 728-5454 Fax (860) 548-9660

_____
**Paul M. Ngobeni, Esq.**

Case 3:02-cv-00960-CFD    Document 263    Filed 02/12/2004    Page 8 of 8