BEFORE THE JUDICIAL PANEL
ON MULTIDISTRICT LITIGATION

IN RE OCWEN FEDERAL BANK FSB   )
MORTGAGE SERVICING LITIGATION  )
_____)
                               )
Allie M. Maddox and Jerry W. Maddox,   )   MDL Docket No. 1604
individually and on behalf of all others )
similarly situated and on behalf of the )
general public,                )
                               )
       Plaintiffs,             )
                               )
v.                             )
                               )
Ocwen Federal Bank FSB and     )
Does 1 through 50, inclusive,  )
                               )
       Defendants.             )
_____)

## RESPONSE OF DEFENDANT OCWEN FEDERAL BANK FSB TO MOTION FOR TRANSFER AND COORDINATION OR CONSOLIDATION OF PRETRIAL PROCEEDINGS

Defendant Ocwen Federal Bank FSB ("Ocwen") respectfully submits this response to plaintiffs' motion for transfer and coordination or consolidation of pretrial proceedings.

### INTRODUCTION

Ocwen agrees with plaintiffs that there is a group of overlapping purported class actions challenging Ocwen's alleged mortgage servicing practices[1] that should be transferred by the Panel to a single district court for coordinated or consolidated pretrial proceedings. But the moving plaintiffs have presented an incomplete list of such related actions, in an apparent effort to convince the Panel to transfer the cases to the Northern District of California, where moving plaintiffs' counsel reside. Ocwen believes the Panel should consolidate all the cases throughout

---

[1] "Servicing" a mortgage loan means receiving payments of principal and interest from borrowers, remitting any required payments to the mortgage noteholders, and, if applicable, administering borrowers' escrow accounts. See 12 U.S.C. §§ 2605(i)(3), 2609.

the nation that that raise similar allegations, and send them to an appropriate forum that maximizes convenience for *all* parties, witnesses, and counsel.

Plaintiffs correctly note that, in a series of actions, various named plaintiffs have alleged that Ocwen has incorrectly classified certain mortgage borrowers as delinquent, and has inappropriately imposed a number of delinquency-related servicing fees and other costs on such borrowers. In these actions, the named plaintiffs purport to represent overlapping classes of borrowers whose mortgages are serviced by Ocwen. In several of the actions, the purported classes consist of all Ocwen customers in the United States during certain defined time periods; in others, the purported classes consist of all Ocwen customers in a particular state. But in all instances, both the underlying factual and legal allegations and the purported class definitions are sufficiently similar to merit coordinated or consolidated treatment under the Panel's rules.[2] Ocwen thus supports plaintiffs' general idea of creating a multidistrict proceeding to handle pretrial proceedings in a group of cases involving similar allegations and overlapping proposed classes.

Ocwen disagrees, however, that the Northern District of California is a proper forum for the proposed multidistrict proceeding. Plaintiffs urge consolidation in that forum based largely on the assertion that four of six identified actions – *Antoine*, *Spires*, *Jackson*, and *Robinson* – are currently pending there. But in one of those actions (*Robinson*), the only class claim against Ocwen has been dismissed, and the parties have agreed in principle to settle the remaining non-class claim. *Robinson* therefore should not be considered by the Panel as part of the proposed multidistrict proceeding. Nor should the Panel ignore the fact that three related actions not

---

[2] As explained more fully below, Ocwen will contest the certification of any proposed class in these actions on the ground that none of the purported classes described in any of the constituent complaints could possibly pass muster under Fed. R. Civ. P. 23. Nonetheless, because the contours of the proposed classes – and therefore the ultimate resolution of the class certification decision – overlap, Ocwen supports the proposed transfer of these actions to a single district court for pretrial proceedings.

mentioned in plaintiffs' transfer motion – *Soto v. Ocwen Federal Bank* (N.D. Ill.), *U.S. Bank, N.A. v. McAuliffe* (N.D. Ill.), and *Hearn v. Ocwen Federal Bank* (E.D. Cal.) – are pending in courts outside the Northern District of California. Plaintiffs' failure to provide an accurate list of related actions fundamentally undercuts any suggestion that there is a "center of gravity" in the Northern District of California that supports transfer to that forum. A proper schedule of related actions is attached to this memorandum at Exhibit 1.

Taking account of the factors the Panel ordinarily considers in selecting a transferee forum, the most appropriate location for this multidistrict proceeding is either the Northern District of Illinois or the Southern District of Florida. The eight actions that should be included in the multidistrict proceeding are pending across the United States, in the East (*Hanson* (D. Conn.)), the Midwest (*Soto* and *McAuliffe* (N.D. Ill.)), Southern California (*Maddox*), Northern California (*Antoine, Spires,* and *Jackson*), and Eastern California (*Hearn*). Media accounts suggest that additional cases are expected to be filed shortly in Chicago and elsewhere, demonstrating that the matters at issue have no special connection to California. Ocwen has neither any physical location nor any employees located in California; Ocwen's mortgage servicing operations are located exclusively in Florida, as are all of Ocwen's documents and virtually of its personnel. And Ocwen's lead defense counsel in the related actions are located in Washington, D.C., and Philadelphia. The Northern District of California is, in short, thousands of miles from most of the witnesses, all of the documents, many of the related actions, and many of the attorneys involved. Under the Panel's traditional selection criteria for determining a forum for multidistrict proceedings, it would far more appropriate to transfer the related actions either to the Northern District of Illinois (a forum where two of the earliest-filed actions are pending, and which is a convenient travel destination for attorneys on both the East and West

Coasts) or to the Southern District of Florida (the forum in which most of the discovery in the multidistrict proceeding will occur).

In sum, Ocwen joins plaintiffs in requesting that the Panel transfer a group of related actions to a single district court for pretrial proceedings. Ocwen respectfully recommends, however, that the constituent actions be transferred to either the Northern District of Illinois or the Southern District of Florida.

## BACKGROUND

Ocwen presently is defending eight purported class actions in which the core allegation is that Ocwen earns profits by charging mortgage customers delinquency-related fees. Six actions allege broadly that Ocwen either purposely or negligently fails to post some customer payments in a timely manner, and then classifies those customers' loans as delinquent in order to charge late fees and various other delinquency-related fees. Four of these "across the board" mortgage servicing actions – *Antoine*, *Spires*, *Maddox*, and *Hanson* – have already been identified by plaintiffs in their transfer motion. Two others, however, were not mentioned by plaintiffs and should be included by the Panel in its transfer order. They are:

- *U.S. Bank, N.A. v. McAuliffe*, No. 03-C-1103 (N.D. Ill., Gettleman, J.) (counterclaim complaint attached at Exhibit 2). This action began as a foreclosure action brought by Ocwen on behalf of a mortgage securitization trust and is now a putative class action brought by two borrowers against Ocwen as primary defendant. Plaintiffs allege that Ocwen sometimes "place[s] borrowers' funds in 'suspense accounts,' or 'unapplied payment accounts'" in order to "force borrowers further into default and to unjustly enrich Ocwen" by permitting it to impose delinquency-related fees and, ultimately to foreclose on borrowers' properties. (Counterclaim Compl. ¶¶ 23-24.) Plaintiffs purport to represent a class consisting of owners of property in Illinois, Indiana, and Wisconsin with respect to whom Ocwen imposed delinquency-related attorneys' fees between February 13, 1993 and the present. (*Id.* ¶ 35.)

- *Hearn v. Ocwen Financial Services, Inc., Ocwen Federal Bank FSB, et al.*, No. 04-0291 (E.D. Cal., Levi, J.) (complaint attached at Exhibit 3). This

4

action alleges that "[t]o generate revenues for itself, Ocwen has engaged in a scheme by which it leaves unwarranted and unlawful late fees on its customers and uses its customers' alleged lateness to improperly assess other fees, up to and including fees associated with the erroneous preparation of default and foreclosure proceedings." (Compl. ¶ 3.) Plaintiff purports to represent a class consisting of all Ocwen customers in California between October 30, 1999 and the present. (*Id.* ¶ 25.)

Among these six "across the board" actions, *Hanson* was filed first in the District of Connecticut, on June 5, 2002. (*See* Docket Sheet (attached at Exhibit 4).) *McAuliffe* was filed next in the Northern District of Illinois, on February 13, 2003. (*See* Docket Sheet (attached at Exhibit 5).) The California actions are much more recent. *Antoine* was filed in state court on October 30, 2003 (complaint attached at Exhibit 6), was served on Ocwen on November 7, 2003, and was removed to the U.S. District Court for the Northern District of California on December 8, 2003. (*See* Docket Sheet (attached at Exhibit 7).) *Spires* was filed in the Northern District of California on December 12, 2003 (complaint attached at Exhibit 8). *Maddox* was filed in the Central District of California on December 29, 2003 (complaint attached at Exhibit 9). *Hearn* was filed in state court on December 31, 2003, was served on Ocwen on January 23, 2003, and was removed to the U.S. District Court for the Eastern District of California on February 9, 2004. (*See* Docket Sheet (attached at Exhibit 10).) In addition to having been filed much more recently, a comparison of the four California complaints reveals them to be nearly identical copies of one another.

In addition to these actions broadly challenging an array of delinquency-related fees allegedly imposed by Ocwen, Ocwen is presently defending two purported class actions that focus more specifically on a particular delinquency-related fee — namely, a fee imposed by Ocwen to recover the cost of engaging outside counsel to prepare breach letters to delinquent borrowers as a first step toward possible foreclosure proceedings. One of these actions, *Jackson*

- 5 -

*v. Ocwen Federal Bank*, is identified in plaintiffs' transfer motion. The other action, however, is not mentioned in plaintiffs' papers. It is:

- *Soto v. Ocwen Federal Bank FSB, et al.*, No. 02 C 6818 (N.D. Ill., Norgle, J.) (complaint attached at Exhibit 11). This action alleges that, when borrowers become delinquent, Ocwen unlawfully imposes a "recoverable breach fee" to recover attorneys' fees incurred in connection with default and possible foreclosure proceedings. (Compl. ¶ 34.) Plaintffs purport to represent a class consisting of all Ocwen customers in the United States who were assessed such a fee between September 24, 1992 and the present. (*Id.* ¶ 41.)

*Soto* was filed in the U.S. District Court for the Northern District of Illinois on September 24, 2002. *Jackson* was not filed in state court until December 13, 2002 (complaint attached at Exhibit 12), and was removed to the U.S. District Court for the Northern District of California on February 21, 2003. (*See* Docket Sheet (attached at Exhibit 13).)

## ARGUMENT

### I. THE PANEL SHOULD INCLUDE *MCAULIFFE*, *HEARN*, AND *SOTO* (BUT NOT *ROBINSON*) IN THE PROPOSED MULTIDISTRICT PROCEEDING.

#### A. *MCAULIFFE*, *HEARN*, AND *SOTO* ALL INVOLVE LEGAL AND FACTUAL ALLEGATIONS AND PROPOSED CLASSES SIMILAR TO THOSE AT ISSUE IN THE CASES PROPOSED FOR TRANSFER BY PLAINTIFFS.

To achieve the efficiencies in discovery and motion practice identified in plaintiffs' transfer motion, the proposed multidistrict proceeding must include three additional actions not mentioned in plaintiffs' papers. *McAuliffe* (N.D. Ill.) and *Hearn* (E.D. Cal.) involve the same legal and factual allegations, and proposed classes, as *Maddox* and its sister actions. As the following table makes clear, the inescapable similarities among the actions dictates that *McAuliffe* and *Hearn* should be included in the proposed multidistrict proceeding:

6

|  | *Maddox* | *McAuliffe* | *Hearn* |
|---|---|---|---|
| **Factual Allegations** | "[C]harging late fees when loan payments have been made in a timely fashion . . . and then pyramiding late charges and initiating defaults and foreclosures without justification." (Compl. ¶ 2(a).) | "[P]lac[ing] borrowers' funds in 'suspense accounts,' or 'unapplied payment accounts'" in order to "force borrowers further into default and to unjustly enrich Ocwen" by permitting it to impose delinquency-related fees and, ultimately, to foreclose on borrowers' properties. (Compl. ¶¶ 23-24.) | "[F]ailing to credit payments received in a timely fashion . . . [and] prematurely referring accounts to collections, regardless of legal and/or contractual grace periods." (Compl. ¶ 4.) |
| **Legal Theories** | Violations of Real Estate Settlement Procedures Act ("RESPA"); breach of contract; violations of California consumer protection statute | Violations of Truth in Lending Act; breach of contract; violations of Illinois consumer protection statute | Violations of RESPA; breach of contract; violations of California consumer protection statute |
| **Proposed Classes** | All persons in the United States whose mortgages were serviced by Ocwen between December 29, 1999 and the present. (Compl. ¶ 32.) | Owners of property in Illinois, Indiana, and Wisconsin whose mortgages were serviced by Ocwen, and who were charged for "attorney's fees that had not been incurred or earned" between February 13, 1993 and the present. (Compl. ¶ 35.) | All California residents whose mortgages were serviced by Ocwen between October 30, 1999 and the present. (Compl. ¶ 25.) |

Because *McAuliffe* and *Hearn* involve the same core allegation in *Maddox* and its sister actions – namely, that Ocwen allegedly violated federal and state law because borrower payments are not timely recorded in order to permit delinquency-related charges to be imposed – as well as overlapping proposed classes, the arguments advanced by plaintiffs in their transfer motion dictate transfer of these additional cases as well.

The Panel should also include *Soto* (N.D. Ill.) as part of the proposed multidistrict proceeding. *Soto*'s allegations are nearly identical to those in *Jackson* (N.D. Cal.), a case proposed by plaintiffs for transfer, and represent a subset of the allegations advanced in the other actions proposed for transfer. As the following chart demonstrates, *Soto* and *Jackson* are

virtually indistinguishable, and share a number of similarities with the other constituent actions:

|  | *Jackson* | *Soto* |
|---|---|---|
| **Factual Allegations** | Imposing $95 fee on delinquent borrowers for cost of sending attorney letters notifying them of default and demanding reinstatement. (Compl. ¶ 9.) | Imposing "recoverable breach fee" on delinquent borrowers for cost of sending attorney letters notifying them of default and demanding reinstatement. (Compl. ¶ 27 & Exh. E.) |
| **Legal Theories** | Violations of California's Rosenthal Fair Debt Collection Practices Act; violations of California consumer protection statute. | Violations of federal Fair Debt Collection Practices Act; breach of contract; violations of Illinois consumer protection statute. |
| **Proposed Classes** | California residents whose mortgages were serviced by Ocwen, whose loans were delinquent, and who were charged for attorney letters notifying them of their default between October 15, 1998 and the present. | All persons in the United States as to whom Ocwen charged a "recoverable breach fee" between September 30, 1992 and the present. |

As the foregoing comparisons make clear, the actions proposed for transfer fall into two categories: (1) a group of actions that broadly challenge the legality of virtually all delinquency-related fees allegedly imposed by Ocwen (*Maddox, Antoine, Spires, Hanson, McAuliffe*, and *Hearn*); and (2) two actions that challenge the legality of a particular delinquency-related fee (*Soto* and *Jackson*). It would defeat the purpose of the multidistrict litigation process to consolidate only some of these related matters. Consolidation of these cases would promote the orderly resolution of numerous substantive and procedural matters best handled by a single decision-maker. For example, because of overlap in substantive legal theories, the resolution of legal arguments Ocwen will advance at the Rule 12 stage would best be dealt with in a coordinated manner. To the extent that these actions proceed beyond the dismissal stage, the factual allegations that are similar among the cases will plainly involve deposition testimony, document production, and written discovery that will apply across all cases. The need to prevent duplicative discovery efforts in these eight actions strongly supports transfer. *See, e.g., In re Temporomandibular Joint (TMJ) Implants Liab. Litig.*, 844 F. Supp. 1553, 1554 (J.P.M.L. 1994)

(centralization "necessary in order to eliminate duplicative discovery, prevent inconsistent trial rulings, . . . and conserve the resources of parties, their counsel and the judiciary."); *In re Silicone Gel Breast Implants Prods. Liab. Litig.*, 793 F. Supp. 1098, 1100 (J.P.M.L. 1992) (same).

In addition, the lawsuits all assert claims on behalf of purported statewide or nationwide classes of borrowers whose mortgages are serviced by Ocwen. The fact that the plaintiffs in each of these actions seek certification of overlapping putative classes makes these actions particularly attractive candidates for consolidation by this Panel. The Panel has "consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists." *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975). *See also In re TMJ Implants Litig*, 844 F. Supp. at 1554 ("[c]entralization is necessary in order . . . to prevent inconsistent pretrial rulings (especially with respect to class certifications and summary judgments)"); *In re Roadway Express, Inc. Employment Practices Litig.*, 384 F. Supp. 612, 613 (J.P.M.L. 1974) ("the existence of and the need to eliminate [the possibility of inconsistent class determinations] presents a highly persuasive reason favoring transfer under Section 1407"); *In re Plumbing Fixture Cases*, 298 F. Supp. 484, 493 (J.P.M.L. 1968) (transfer necessary to avoid "pretrial chaos in conflicting class action determinations"); *In re Hawaiian Hotel Room Rate Antitrust Litig.*, 438 F. Supp. 935, 936 (J.P.M.L. 1977) ("[S]ection 1407 centralization is especially important to ensure consistent treatment of the class action issues"); *In re Mutual Fund Sales Anti-trust Litig.*, 361 F. Supp. 638, 639-40 (J.P.M.L. 1973) ("we have frequently held that the possibility for conflicting class determinations under [Fed. R. Civ. P. 23] is an important factor favoring transfer of all actions to a single district").