Ocwen intends to contest plaintiffs' assertions that their claims ought to be afforded class treatment pursuant to the criteria set forth in Fed. R. Civ. P. 23. Because the proposed classes in these actions overlap (and in several cases are virtually identical), the arguments presented both for and against certification will presumably be the same. Thus, there will be a substantial possibility of inconsistent rulings on class certification and other class action-related issues if these cases are not consolidated. Given the significant overlap in the proposed classes in these actions, the parties and the courts would surely benefit from having a single judge oversee the class action issues to avoid duplicative efforts and inconsistent rulings. *See, e.g., In re Rio Hair Naturalizer Prods. Liab. Litig.*, 904 F. Supp. 1407, 1408 (J.P.M.L. 1995) ("Centralization under Section 1407 is necessary in order to . . . prevent inconsistent pretrial rulings (especially with respect to overlapping class certification requests)"); *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 568 F. Supp. 1250, 1251 (J.P.M.L. 1983) (centralization necessary where overlapping class certifications sought in all relevant actions); *In re Cuisinart Food Processor*, 506 F. Supp. at 655; *In re Resource Exploration, Inc., Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980) ("An additional justification for transfer is the fact that most of the actions before us have been brought on behalf of similar or overlapping classes of purchasers of the limited partnerships.").

For these reasons, Ocwen respectfully requests that the Panel include in its transfer order eight actions: *Maddox, Antoine, Spires, Hanson, McAuliffe, Hearn, Soto,* and *Jackson.*

### B. *ROBINSON* IS INAPPROPRIATE FOR TRANSFER BECAUSE IT NO LONGER INVOLVES CLASS ALLEGATIONS AGAINST OCWEN, AND BECAUSE THE REMAINING INDIVIDUAL CLAIM IS EXPECTED TO BE SETTLED SHORTLY.

Plaintiffs have proposed that *Robinson v. Moss, Codilis et al.* (N.D. Cal.) should be included as part of the proposed multidistrict proceeding. (*See* Pl. Mem. at 4.) The only possible basis for including *Robinson* in the proposed multidistrict proceeding, however, is the *Robinson*

complaint's assertion, on behalf of a putative class, that Ocwen's alleged practice of imposing a fee for attorney-generated breach letters violates the federal Fair Debt Collection Practices Act (the same class allegation at issue in *Soto*, and similar to the class allegation at issue in *Jackson*). On July 1, 2003, the district court dismissed this claim with prejudice. (*See Robinson v. Moss, Codilis et al.*, No. 03-1302, slip op. (N.D. Cal. July 1, 2003) (attached at Exhibit 14.) The only remaining claim against Ocwen in the *Robinson* action is an individual, non-class claim for wrongful foreclosure. That claim does not parallel any claim in any of the other constituent actions, and in any event the parties have agreed in principle to settle that claim, with a settlement expected to be finalized before February 29, 2004. (*See* Declaration of Randall Edwards (attached at Exhibit 15).) *Robinson* thus does not meet any of the criteria required for transfer under 28 U.S.C. § 1407 – there is no potential for duplicative discovery, overlapping motion practice, or inconsistent class certification rulings. Indeed, at present there is every reason to believe that by the time the Panel sits to consider plaintiffs' transfer motion, Ocwen will no longer be a party defendant in the *Robinson* action at all. *Robinson* thus should play no role in the Panel's consideration of an appropriate forum for transfer.

II. **THE NORTHERN DISTRICT OF ILLINOIS AND THE SOUTHERN DISTRICT OF FLORIDA ARE BOTH MORE APPROPRIATE TRANSFEREE FORA THAN THE NORTHERN DISTRICT OF CALIFORNIA.**

These actions are presently pending before district courts in five districts: one in the District of Connecticut, two in the Northern District of Illinois, one in the Central District of California, one in the Eastern District of California, and three in the Northern District of California. Ocwen's mortgage servicing operations, and thus the significant majority of the witnesses and documents that will be the subject of pretrial proceedings, are located in West Palm Beach, Florida. None of Ocwen's personnel or offices are in, or even near, California.

Ocwen therefore respectfully recommends that this Panel either transfer the constituent actions to the Northern District of Illinois, a convenient "center of gravity" with respect to parties, attorneys, and actions scattered throughout the United States, or transfer the constituent actions to the Southern District of Florida, where the majority of discovery-related activities are likely to occur.

### A. TRANSFERRING THESE ACTIONS TO THE NORTHERN DISTRICT OF ILLINOIS WOULD MAXIMIZE THE CONVENIENCE OF PARTIES, ATTORNEYS, AND WITNESSES, WHILE TAKING ADVANTAGE OF A COURT WITH SIGNIFICANT EXPERIENCE ON THE RELEVANT ISSUES.

When confronted with actions pending in multiple districts scattered throughout the United States, the Panel has frequently sought a transferee forum that is centrally located and easily accessible by the parties, attorneys, and witnesses. Indeed, in cases where constituent actions are pending on both coasts as well as elsewhere, the Panel has often identified the Northern District of Illinois as the most appropriate transferee forum. *See, e.g., In re Wireless Telephone 911 Calls Litig.*, 259 F. Supp. 2d 1372 (J.P.M.L. 2003) (transferring to the Northern District of Illinois actions pending in district courts in California, Florida, Illinois, Texas, New York, New Jersey, and Washington); *In re African-American Slave Descendants Litig.*, 231 F. Supp. 2d 1357 (J.P.M.L. 2002) (transferring to the Northern District of Illinois actions pending in district courts in California, Illinois, Louisiana, New York, Pennsylvania, and New Jersey); *In re McDonald's Corp. Promotional Games Litig.*, 192 F. Supp. 2d 1381 (J.P.M.L. 2002) (transferring to the Northern District of Illinois actions pending in district courts in Arizona, Arkansas, Florida, Illinois, New Jersey, and Pennsylvania).

As in these and other matters that the Panel has transferred to the Northern District of Illinois, not only are two of the constituent actions currently pending in that district, but that district is the most convenient location for the parties, attorneys, and witnesses. The proposed

multidistrict proceeding includes three purported class actions pending in courts east of the Mississippi: *Hanson* (D. Conn.), *McAuliffe* (N.D. Ill.), and *Soto* (N.D. Ill.). According to media accounts, a Chicago plaintiffs' law firm is expected to file another purported class action against Ocwen in the near future,[3] and a Tampa, Florida plaintiffs' law firm is reportedly poised to file additional actions.[4] While five actions proposed for transfer are pending in three different districts in California, four of those cases (*Maddox, Antoine, Spires,* and *Hearn*) have been pending less than 90 days, and are very nearly identical copies of each other. Given that and the fact two of those four actions (*Maddox* and *Spires*) allege the existence of nationwide classes most of whose members have no special connection to California, it becomes clear that the Northern District of California is no more reasonable than the Northern District of Illinois as a potential transferee forum.

Considered in light of the location of the parties, attorneys, and likely witnesses, it becomes clear that the Northern District of Illinois is far superior in terms of the convenient and efficient prosecution of the actions. Ocwen's primary defense counsel in the actions proposed for transfer are located in Washington, D.C. and Philadelphia. Ocwen has no physical location and no employees in California; virtually all Ocwen personnel are located in Florida, as are all or nearly all Ocwen mortgage servicing documents. (*See* Declaration of Chomie R. Neil (attached at Exhibit 16).) And plaintiffs' counsel and the named plaintiffs themselves in *Hanson, McAuliffe,* and *Soto* are all located in the Eastern United States. (Indeed, at a hearing in the *McAuliffe* matter on February 10, 2004, plaintiffs' counsel stated in open court their belief that

---

[3] *See* NCRC Takes Fight Against Ocwen To Capitol Hill, HOME EQUITY NEWS, December 15, 2003, at 10 (noting that the National Community Reinvestment Coalition "moved a step closer to filing its class-action lawsuit against Ocwen, by retaining the Chicago-based law firm Edelman, Combs & Latturner. The NCRC is expected to file its suit within weeks . . . .") (attached at Exhibit 17).

[4] *See* Joanne Y. Cleaver, *Trouble On The Home Front,* COLLECTIONS & CREDIT RISK, February 2004, at 26 (noting that Tampa law firm James, Hoyer, Newcomer & Smiljanich "has taken on two complaints against Ocwen Financial Corp.") (attached at Exhibit 18).

13

that case should be included in the proposed multidistrict proceeding.) It would be far more convenient and cost-efficient for all parties and counsel to litigate a consolidated proceeding in a central location like the Northern District of Illinois, than to force a large number of parties, attorneys, and witnesses to undertake transcontinental air travel for every status conference and court hearing – all for the convenience of a handful of plaintiffs' attorneys who recently elected to file a cache of nearly identical purported nationwide class actions in California similar to existing putative nationwide class actions pending outside California.

The logic of centralizing these actions in the Northern District of Illinois is underscored by the fact that the two judges presiding over related actions there, Judge Norgle and Judge Gettleman, have presided over their actions for more than a year, have overseen discovery, and have considered and ruled upon substantive motions. By contrast, the California district courts (save for the *Jackson* district court) have undertaken no substantive proceedings at all. Panel precedent holds that where a district court "already has relevant experience with some issues likely involved in [the] litigation," that district court is particularly well-suited to manage the multidistrict proceeding. *In re Wireless Telephone Radio Frequency Prods. Liab. Litig.*, 170 F. Supp. 2d 1356 (J.P.M.L. 2001); *see also In re Welding Rod Prods. Liab. Litig.*, 269 F. Supp. 2d 1365 (J.P.M.L. 2003) (noting transferee judge had "experience in multidistrict products liability litigation"); *In re Gabapentin Patent Litig.*, 2001 U.S. Dist. LEXIS 1726 (J.P.M.L. Feb. 5, 2001) (noting transferee judge's "considerable experience with the patent issues present in this docket as a result of presiding over earlier related actions").

The Northern District of Illinois is also a more logical forum than the Northern District of California based on 2003 caseload statistics. The median time from filing to disposition of civil matters in the Northern District of Illinois (5.5 months) is only half as long as the median time

14

from filing to disposition of civil matters in the Northern District of California (10.6 months).[5] The shorter disposition time in the Northern District of Illinois reflects a caseload per judge that is more than 25 percent lighter than in the Northern District of California – 395 pending cases per judge in the Northern District of Illinois versus 541 cases per judge in the Northern District of California.[6] For this additional reason, Ocwen suggests that the cause of party and judicial efficiency would best be served by transferring these actions to the Northern District of Illinois.

### B. AS THE LOCATION OF MOST WITNESSES AND DOCUMENTS, THE SOUTHERN DISTRICT OF FLORIDA WOULD ALSO BE AN APPROPRIATE TRANSFEREE FORUM.

The Panel has indicated that, under 28 U.S.C. § 1407(a), one important factor in its determination of where to transfer actions for consolidated multidistrict litigation is the convenience of the parties and witness; with respect to this factor, it will consider such matters as the parties' principal place of business and the location of the documents and witnesses necessary to conduct the pretrial proceedings. *See, e.g., In re Air Crash Disaster Near Coolidge, Ariz., on May 6, 1971*, 362 F. Supp. 572, 573 (J.P.M.L. 1973) (location of documents and anticipated witnesses important to consolidation decision). This factor clearly favors the Southern District of Florida. Ocwen's corporate headquarters are located in the Southern District of Florida, and virtually all of its employees are located either in the Southern District of Florida or in neighboring counties to the north. (*See* Neil Decl.) Most of the documents relating to Ocwen's mortgage servicing activities are similarly located either in the Southern District of Florida or just to the north at Ocwen's mortgage servicing center in Orlando, Florida. Production of Ocwen documents created and maintained in Florida, and discovery of Ocwen witnesses residing in Florida, likely will be required in these cases. Accordingly, a significant

---

[5] Data available at http://www.uscourts.gov/fcmstat/index.html.
[6] *See id.*

15

gain in efficiency, for both the parties and the judiciary, can be achieved if these actions are transferred to the Southern District of Florida.

In like circumstances, this Panel has frequently transferred multidistrict litigation to the situs of the defendant's corporate headquarters, or the district where the greatest number of witnesses and documents are likely to be found. *See, e.g., In re Salomon Bros. Treasury Sec. Litig.*, 796 F. Supp. 1537, 1538 (J.P.M.L. 1992) ("Salomon's allegedly illegal activities took place in New York at Salomon's corporate headquarters, and document and witnesses relating to Salomon's conduct are located there").[7] While no constituent action is currently pending in the Southern District of Florida, the Panel has transferred actions to the district where the majority of witnesses and documents are located, despite the lack of a pending action in that forum. *See, e.g., In re Southwestern Life Ins. Co. Sales Practices Litig.*, 268 F. Supp. 2d 1377, 1378 (J.P.M.L. 2003) (transferring actions pending in California, Mississippi, and Alabama to the Northern District of Texas based on location of defendant's headquarters); *In re Great Southern Life Ins. Co. Sales Practices Litig.*, 1998 U.S. Dist. LEXIS 6442 (J.P.M.L. May 5, 1998) (transferring actions pending Alabama, Florida, and the Eastern District of Texas to the Northern District of Texas based on location of defendant's headquarters); *In re Swine Flu Immunization Prods. Liab. Litig.*, 446 F. Supp. 244, 247 (J.P.M.L. 1978) (to same general effect).

As with the Northern District of Illinois, caseload statistics demonstrate that the Southern District of Florida would be a more logical forum choice than the Northern District of California. The median time from filing to disposition of civil actions in the Southern District of Florida is

---

[7]  *See also In re Air Crash Disaster at Sioux City, Iowa, on July 19, 1989*, 128 F.R.D. 131, 132 (J.P.M.L. 1989) (noting that "relevant documents can likely be found within this district at United's headquarters"); *In re Baldwin-United Corp. Litig.*, 581 F. Supp. 739, 740 (J.P.M.L. 1984) ("many of the parties, potential witnesses and relevant documents are located in the Southern District of New York (where defendant broker dealer firms have their principal offices and headquarters)"); *In re Commonwealth Oil/TESORO Petroleum Sec. Litig.*, 458 F. Supp. 225, 230 (J.P.M.L. 1978) ("Furthermore, the corporate headquarters of CORCO and TESORO are located in the Western District of Texas and, as a result, many relevant documents and witnesses are located there.").

6.3 months, as compared with 10.6 months in the Northern District of California.[8] Again, this reflects a less-onerous caseload per judge; the number of pending cases per judge in the Southern District of Florida is only 433, as compared with 541 in the Northern District of California.[9] Thus, if for some reason the Panel determines not to transfer the constituent actions to the Northern District of Illinois, Ocwen requests that the Panel transfer these actions to the Southern District of Florida.

## CONCLUSION

For the foregoing reasons, defendant Ocwen Federal Bank FSB respectfully requests that the Panel transfer the eight actions identified on the attached schedule either to the Northern District of Illinois or to the Southern District of Florida for consolidated or coordinated pretrial proceedings.

Dated: February 11, 2004

Harold J. Engel
REED SMITH
1301 K Street, N.W.
Suite 1100 – East Tower
Washington, D.C. 20005
(202) 414-9200
(202) 414-9299 (facsimile)

Respectfully submitted,

Brian P. Brooks
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300
(202) 383-5414 (facsimile)

Robert A. Nicholas
REED SMITH
2500 One Liberty Place
1650 Market Street
Philadelphia, Pennsylvania 19103
(215) 851-8100
(215) 851-1420 (facsimile)

*Counsel for Defendants*
*Ocwen Financial Corporation*
*Ocwen Federal Bank FSB*
*Ocwen Financial Services, Inc.*

---

[8] Data available at http://www.uscourts.gov/fcmstat/index.html.
[9] See id.