UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KWEKU HANSON ) | No. 3:02-CV-960(CFD) |
| individually and on behalf of ) | |
| all others similarly situated ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| OCWEN FEDERAL BANK, et al. ) | |
|     Defendants. ) | |
| _____) | MARCH 10, 2004 |

PLAINTIFFS' OBJECTION TO LITTON LOAN SERVICING LP'S
MOTION TO STRIKE PLAINTIFFS' COMPLAINT WITH PREJUDICE

on February 19, 2004 Litton filed a motion to strike the Plaintiffs' complaint with prejudice. Litton's misguided motion to strike with prejudice is devoid of factual foundation and lacks legal logic. Pursuant to applicable Fed.R.Civ.P. and D.Conn.L.Civ.R. provisions, Plaintiffs hereby vigorously Object to, and oppose, Litton's disingenuous effort to short-circuit Plaintiffs' case.[1]

**ORAL ARGUMENT IS REQUESTED**

**TESTIMONY WILL BE REQUIRED**

---

[1] Barely a week before filing its motion, Litton affirmatively approached Plaintiffs asking what it would take for Hanson to settle his comprehensive claims against Litton. While supposedly extending its right hand in amicable consideration of a compromise, Litton's left hand was clandestinely clasped around a drawn dagger to puncture Plaintiffs' jugular vein.

- 1 -

Litton asserts it its ambitious motion that Plaintiffs have failed to comply with this Court's orders issued on November 24, 2003 by Magistrate Garfinkel compelling discovery by a date certain. This assertion is preposterously puerile, and Plaintiffs have attached hereto an Affidavit and a compendium of exhibits which will debunk Litton's factual allegations and controvert the logical underpinnings of its motion.

Some perspective is in order. On February 27, 2003 this Court initially issued a Scheduling Order [Docket #118] to govern bifurcated discovery in this litigation. Plaintiffs subsequently filed motions [Docket #132] to enlarge the time for discovery and [Docket #133] to modify the 2/27/03 Scheduling Order as impractical. On April 29, 2003 this Court partially granted Plaintiffs' motions. [*See* Docket #143] and amended and clarified its 2/27/03 Scheduling Order to have a two-pronged discovery regime. Phase one would regard "the merits of the plaintiff's claims and whether the requirements of class certification under [Fed.R.Civ.P. 23] are satisfied." Phase two would concern the merits of the claims of the class.[2]

---

[2] The 4/29/03 Order stated that "[t]he first phase shall commence immediately and will be completed by October 1, 2003. By **July 1, 2003**, non-expert witness discovery *regarding the merits of the plaintiff's claims and the requirements of class*

-2-

On or after April 29, 2003 Defendants began filing a litany of litigious discovery motions to compel [*e.g.* Docket #144, 145] or to evade discovery [*e.g.* Docket #146]. Plaintiffs filed their own slew of motions. [*See, e.g.* Docket #149, 171, 172, 174]. This Court routinely referred the raft of discovery disputes to Magistrate Judge Garfinkel. *See, e.g.* Docket #158, 163, 164, 168. On November 4, 2003 the court set for hearing all discovery disputes.

At a hearing on November 24, 2003 Magistrate Judge Garfinkel issued oral orders later formalized into a Ruling [Docket #208]. Essentially, Litton's motion to preclude and/or dismiss was denied, although the Court directed Plaintiffs to comply with Litton's unopposed discovery motions by December 31, 2003.

---

*certification under [Fed.R.Civ.P. 23] shall be completed. By* **August 1, 2003,** *plaintiff's expert witness designations and reports regarding the merits of plaintiffs claims and the requirements of class certification under [Fed.R.Civ.P. 23] must be exchanged. By* **September 1, 2003,** *depositions of the plaintiff's experts regarding the merits of plaintiffs claims and the requirements of class certification under [Fed.R.Civ.P. 23] must be completed. By* **September 1, 2003,** *defendants' expert witness designations and reports regarding the merits of plaintiffs claims and the requirements of class certification under [Fed.R.Civ.P. 23] must be exchanged. By* **October 1, 2003,** *depositions of the plaintiff's experts regarding the merits of plaintiffs claims and the requirements of class certification under [Fed.R.Civ.P. 23] must be completed."*

- 3 -

Plaintiffs have already cited Litton's status as a defendant in a Tennessee federal putative nationwide class action in which the named plaintiffs have already secured a preliminary injunction against Litton. While neither the Tennessee lawsuit nor the one at bar constitutes proof positive, it certainly raises eyebrows that Hanson is not alone in making serious allegations of fraudulent loan servicing against Litton.

Litton seeks to persuade this Court that somehow it has been hampered in complying with the Court's November 24, 2003 orders regarding Litton's need to conclude Hanson's deposition by mid-February, 2004 due to Plaintiffs' refusal to comport with this Court's discovery orders. The claim is demonstrably disingenuous!

Before the November, 24, 2004 hearing (indeed within a short time after Litton filed its motion to preclude and/or dismiss), Plaintiffs realized that in focusing their fire on the Ocwen and Moss Codilis defendant groups, they had paid scant attention to Litton's discovery evasion. Of more immediate concern however was Plaintiffs' appreciation that they had not responded to Litton's discovery requests[3] and/or its subsequent motions to compel.

Consequently, Plaintiffs scrambled to prepare responses to

---

[3] Plaintiffs prepared initial responses to Litton's discovery requests but neither served them within the time-frame specified by the *first* Scheduling Order nor seasonably objected.

-4-

Litton's interrogatories and requests for production. Hanson brought these discovery responses (with enough copies to serve all customary counsel of record) to the hearing in Bridgeport in an effort to prove compliance, albeit belated, with Litton's discovery demands in an effort to defuse possible sanctions.

In fact, the pile of papers relating to Litton's discovery requests were stacked in file folders front of Hanson during the hearing in Bridgeport. Hanson's huddled hogging of the discovery responses apparently inadvertently induced Moss Codilis' counsel Attorney Shiber to misleadingly assert in his oral argument on November 24, 2003, that Hanson actually had on his person a large number of Moss Codilis proprietary records which he had the temerity to bring to the hearing but had refused to turn over.[4]

As a result of the same-day, back-to-back orders which issued from this Court out of Bridgeport and Hartford on November 24, 2003, it became necessary to withdraw and redraft/revise the responses to Litton's interrogatories and production requests.

Plaintiffs busied themselves with a multiplicity of orders

---

[4]   *Cf*. Transcript of 11/24/03 Bridgeport Hearing, entitled <u>Motions Hearing Before Hon. William I. Garfinkel, USMJ</u>, at p.79, lines 9-12 [attached as **Exhibit A**]. Plaintiffs had other research and pleading material, plus a small sample of closely guarded records regarding Defendants' loan servicing-related derelictions, but that was largely clasped in three-ring binders.

-5-

including, *inter alia*, relinquishing material previously filed *ex parte* and/or under seal; affirming Plaintiffs' pursuit of an immediate preliminary injunction hearing request; and revising and pruning Plaintiffs' Request for Admissions. Between December 27 and 31, 2003, regular and temporary staff at Hanson's office sorted, Bates-stamped, copied, collated, stapled, and segregated into one prominent pile thousands of pages of documents arguably responsive to Defendants' discovery requests.

Before the famed Ball dropped in Times Square, Plaintiffs had fully complied with this Court's discovery directives, as much in an effort to prevent further delay of the litigation as to avert judicial sanctions. Plaintiffs' counsel notified all defense counsel of Plaintiffs' tender on December 31, 2003 of all discovery material and invited Defendants via email to physically inspect the records and select which items they wanted to be copied. Implicit in representing that Plaintiffs had responses ready to all outstanding discovery requests was the notion that it was not limited to production requests but that Plaintiffs had also comported with this Court's directives by supplementing or revising responses to Defendants interrogatories. *See* **Exhibit B**.

- 6 -

Thereafter, following further telephonic discussions centered primarily on the cost of obtaining the produced records, Litton notified Plaintiffs' counsel to go ahead and duplicate the thousands of pages of records, as Litton would have a courier prepay for, and pick up, Litton's discovery. Plaintiffs promptly complied. *See* 3/4/04 Affidavit of Kweku Hanson, p.4, ¶¶15-17.[5]

While Litton would have this Court find that a January 5, 2004 email from Litton's counsel asking that the documents be shipped out and billed to Litton's Fedex or Airborne Express account number settled the discussion, *see* **Exhibit D**, that was not the end of the story. Plaintiffs' counsel subsequently circulated an email dated January *9*, 2004 in which he clearly stated that "Attorney Spadafora agreed to have his agent pay for, *and pick up*, the 2,260-plus papers. Consequently, copies have been made ONLY FOR LITTON. These material will be ready *for pick up* beginning 10:00 a.m. Monday morning if that is convenient." *See* **Exhibit E**. However, in a baffling development, Litton's courier never materialized, and Litton prepaid for its records.[6]

---

[5] Said Affidavit is attached hereto as **Exhibit C**.

[6] Moss Codilis, which had also indicated its willingness to prepay the reasonable copying expenses and obtain the tendered discovery, also never sent a courier to collect its discovery.

-7-

Instead Ocwen, which had been the holdout defendant group in terms of agreeing to prepay the copying costs,[7] raced to pick up the records upon notification of their duplication. *See* **Exhibit F**. Meantime, at all times relevant to this debate and subsequent to December 31, 2003, Plaintiffs completely complied to their reasonable ability with every Defendant's discovery request. In fact, Plaintiffs went further than was required by their discovery duty when they incurred considerable expense and expended considerable time and human resources to replicate in electronic format emails which in print version would have amounted to several thousand pages and cost Defendants several additional hundred dollars and untold hours to examine.[8]

The same cannot be said of *any* Defendant. Moss Codilis' disregard of Plaintiffs' discovery requests having been ratified by Magistrate Judge Garfinkel because Plaintiffs failed to file a memorandum in support of their timely motion to compel, Moss Codilis was off the hook regarding any duty to further disclose.

---

[7] Ocwen initially wanted a courier to remove the original records, duplicate them at a more competitive cost, and return the originals to the repository at Hanson's office where the records had been assembled, *ad hoc*.

[8] Plaintiffs absorbed the costs of the digital documents and donated said CD-ROMS to Defendants. *Cf*. **Exhibit G**.

Accordingly, Moss Codilis never responded without objection to Plaintiffs' interrogatories, requests for production, and request for admissions. Nor did it file any supplement other than its controversial privilege log. This was in spite of Plaintiffs' timely, local rule-complaint motion to strike Moss Codilis' privilege claims which in substance was a motion to compel.[9] Litton, whose abject failure to comply with Plaintiffs' discovery requests was not objected to by Plaintiffs, also walked away unscathed from the November 24, 2003 hearing with no duty to produce as much as one sheaf of paper from Hanson's loan file.[10]

Apparently, Defendants are anticipatorily apprehensive about this Court's impending ruling on the Rule 12(b)(6) motions. Or perhaps, Defendants are unenthusiastic about the fact that what they boastfully branded as "a small dispute between Hanson and his loan servicer" has metamorphosed into a conflagration of MDL-brokered lawsuits against the Ocwen and Moss Codilis defendants.

---

[9] Fortuitously, what one court taketh away, the MDL process giveth back, and Plaintiffs probably will become privy to sworn responses to the equivalent of their discovery requests under the auspices of an MDL consolidation, so that the search for Truth may remain paramount and unimpeded.

[10] To this day, Hanson is no wiser as to how his loan is being serviced by Litton and the circumstances under which his loan wound up being tossed from Ocwen to Litton.

Litton, presciently, sees that it too can be vacuumed into the voracious vortex if it does not manage to neutralize the lingering litigation at bar.[11] Therefore, it seeks to deliver a technical knockout to a wrestling match where the underdog has lasted almost the full twelve rounds despite being body-slammed by some of the nation's and Connecticut's most seasoned wrestlers. This, while prattling about an amicable settlement.

Motion to Strike-Legal Considerations

Rule 12(f) of the Federal Rules of Civil Procedure provides that "[u]pon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."[12]

---

[11] The Ocwen MDL litigation notwithstanding, Litton may very well wind up being "MDL'd," given the pendency of the Tennessee class action which raises similar loan servicing fraud issues. Under petitioning processes of the JPML, the existence of two or more putative class action lawsuits in different federal districts against the same defendant(s) suffices for any plaintiff or defendant party to invoke the MDL process. Hanson's forbearance aside, Lief Cabraser has set its gunsights on Litton.

[12] Fed.R.Civ.P. 12(f).

In considering a motion to strike, the court may draw all reasonable inferences in the pleader's favor and resolve all doubts in favor of denying the motion to strike. Wailua Assocs. v. Aetna Cas. & Sur. Co., 183 F.R.D. 550, 553-54 (D. Haw. 1998); Joe Hand Promotions, Inc. v. Nekos, 18 F. Supp. 2d 214, 218 (N.D.N.Y. 1998); Seibel v. Society Lease, Inc., 969 F. Supp. 713, 715 (M.D. Fla. 1997). Consequently, the burden lies with the movant. Vakharia v. Little Co. of Mary Hosp. & Health Care Ctrs., 2 F. Supp. 2d 1028, 1033 (N.D. Ill. 1998).

The decision to grant or deny a motion to strike is vested in the trial judge's sound discretion. Talbot v. Robert Matthews Distrib. Co., 961 F.2d 654, 664-65 (7th Cir. 1992) (citing Alvarado-Morales v. Digital Equip. Corp., 843 F.2d 613, 618 (1st Cir. 1988)). Courts generally disfavor motions to strike because they may serve only to cause delay, Heller v. Midwhey Powder Co., Inc., 883 F.2d 1286, 1294 (7th 1989); *see also* Morse v. Weingarten, 777 F.Supp. 312, 319 (S.D.N.Y. 1991); Schramm v. Krischell, 84 F.R.D. 294, 299 (D. Conn. 1979).[13]

---

[13]  *See also* 2 James Wm. Moore et al., Moore's Federal Practice § 12.37[1] (3d ed. 2000) ("Courts disfavor the motion to strike, because it 'proposes a drastic remedy.'").

Only in limited instances, such as where the pleadings sought to be stricken are prejudicial, will a motion to strike be embraced by the courts. *See* Makuch v. Fed. Bureau of Investigation, 2000 U.S. Dist. LEXIS 9487, at *7 (D.D.C. Jan. 6, 2000); *e.g.*, Wiggins v. Philip Morris, Inc., 853 F.Supp. 457, 458 (D.D.C. 1994); 5A Fed. Prac. & Proc. 2d §§1380, 1382.[14]

The Second Circuit in Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976), where it reiterated its view that motions to strike are disfavored, pointed out that "the Federal Rules of Civil Procedure have long departed from the era when lawyers were bedeviled by intricate pleading rules and when lawsuits were won or lost on the pleadings alone." Lipsky, 551 F.2d at 893.[15]

---

[14] Litton makes no claim whatsoever that granting its motion to strike will "remove unnecessary clutter from the case [and] serve to expedite, not delay [this litigation]." *Cf.* Heller, *supra*. Nor has Litton shown that granting its motion to strike is in the interests of judicial economy and expedition.

[15] The Second Circuit emphasized its rationale as follows: "*Evidentiary questions, such as the one present in this case, should especially be avoided at such a preliminary stage of the proceedings*. Usually the questions of relevancy and admissibility in general require the context of an ongoing and unfolding trial in which to be properly decided." Lipsky, at 893.

A factor that enters into the equation in deciding a motion to strike is prejudice caused to a plaintiff by the pleading sought to be struck. Makuch, 2000 U.S. Dist. LEXIS 9487, at *7; Wiggins, 853 F. Supp. at 458; 5A Fed. Prac. & Proc. 2d §§1380 at n.11, 1382 at n.11; Regent Nat'l Bank v. Dealers Choice Automotive Planning, Inc., 1998 U.S. Dist. LEXIS 20122, at *13 (E.D. Pa. 1998) (noting that "the amended answer will cause prejudice to the Plaintiff by necessitating additional discovery, expense, and time"). Here, again, Litton can assert no demonstrable prejudice in having to await a decision of this case on its merits. Litton has not been prejudiced by its own refusal to collect documents which have been available to its counterpart and alleged co-conspirator Ocwen since December 31, 2003 and which has in fact been in Ocwen's actual hands since late January, 2004. Litton cannot base its whole case on Plaintiffs' admittedly derelict past history, namely Plaintiffs' pre-December 31, 2004 conduct in not complying with or opposing Litton's discovery requests.

Litton comes into Court with unclean hands as it has itself evaded discovery so far. It is therefore tantamount to a totally tempestuous temerity that Litton feels emboldened to stride into this Court and ask for a dismissal with prejudice.

- 13 -

Equally importantly, Moss Codilis on February 24, 2004 filed a motion as yet unopposed by any *Defendant*, to stay all proceedings in this case pending a decision by the JPML. Moreover, as demonstrated above, Litton's motion lacks factual accuracy. Plus, this Court's Rule 12(b) ruling cannot be too far off; Litton *should* not seek to short-circuit the 12(b)(6) ruling.

Plaintiffs have demonstrably established that they have done nothing unethical, illegal or underhanded to warrant the severe sanction of dismissal with (or without) prejudice. The Court should deny Litton's motion to strike the brief at bar it because Litton has failed to satisfy one iota of the three prerequisites for a motion to strike: (1) "[Plaintiffs'] defenses presented are clearly insufficient." *See* Canadian St. Regis Band of Mohawk Indians v. New York, 2002 WL1801656 *4, __ F.Supp.2d __ (N.D.N.Y. July 28, 2003); (2) Plaintiffs' alleged post-12/31/03 discovery dereliction does not involve "disputed and substantial questions of law." *See* Estee Lauder v. Fragrance Counter, Inc., 189 F.R.D. 269 (S.D.N.Y. 1999); (3) Litton is not prejudiced by this Court's almost completed consideration of the merits of Litton's test of the legal sufficiency of Plaintiffs' complaint. Litton's misguided motion to strike should be denied forthwith!

Respectfully submitted,

                                                     _____
Paul M. Ngobeni (#ct08187)
Law Offices of Paul Ngobeni
914 Main Street, Suite 206
East Hartford, CT 06108
Telephone: (860) 289-3155
Facsimile: (860) 282-7479

## CERTIFICATION

A copy of Plaintiffs' **Objection to Litton's Motion to Dismiss Plaintiffs' Complaint with Prejudice** was mailed March 10, 2004, postage prepaid, to counsel and *pro se* parties of record:

| | |
|---|---|
| Steven M. Greenspan, Esq.<br>David M. Bizar, Esq.<br>Day, Berry & Howard LLP<br>CityPlace I<br>Hartford, CT 06103-3499<br>(860) 275-0100 Fax (860) 275-0343 | Matthew Budzik, Esq.<br>Francis J. Brady, Esq.<br>Murtha Cullina LLP<br>CityPlace I, 185 Asylum Street<br>Hartford, CT 06103<br>(860) 240-6000 Fax (860) 240-6150 |
| Basil S. Shiber, Esq.<br>Richard G. Carlston, Esq.<br>Miller, Starr & Regalia<br>1331 N. California Blvd. 5th Floor<br>P. O. Box 8177<br>Walnut Creek, CA 94596<br>(925) 935-9400 | Theodore R. Scarborough, Esq..<br>John Van De Weert, Esq.<br>Sidely, Austin, Brown & Wood<br>Attorneys at Law<br>Bank One Plaza<br>Chicago, IL 60603<br>(312) 853-7036 Fax (312) 853-2236 |
| Luigi Spadafora, Esq.<br>Peter R. Stark, Esq.<br>Winget, Spadafora & Schwartzberg<br>45 Broadway, 19th Floor<br>New York, NY 10006<br>(212) 221-6900 Fax (212) 221-6989 | Kweku J. Hanson, Esq. (*Pro Se*)<br>Law Offices of Kweku J. Hanson<br>487 Main Street, Suite Two<br>Hartford, CT 06103-3007<br>(860) 728-5454 Fax (860) 548-9660 |

                                                  _____
**Paul M. Ngobeni, Esq.**