UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KWEKU HANSON, ET AL.,                    .    Case No. 3:02-CV-00960
                                         .    (CFD)
                    Plaintiff,           .
                                         .
       v.                                .    Bridgeport, Connecticut
                                         .    November 24, 2003
OCWEN FEDERAL BANK, ET AL.,              .
                                         .
                                         .
                    Defendants.          .
. . . . . . . . . . . . . . .            .

MOTIONS HEARING
BEFORE THE HONORABLE WILLIAM I. GARFINKEL
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:              Law Offices
                            By: PAUL MPANDE NGOBENI, ESQ.
                            914 Main Street, Suite 206
                            E. Hartford, Connecticut 06108

For Defendant Ocwen:        Sidley & Austin
                            By:  THEODORE SCARBOROUGH, ESQ.
                            Bank One Plaza
                            10 South Dearborn Street
                            Chicago, Illinois 60603

                            Murtha, Cullina, LLP
                            By:  FRANCIS J. BRADY, ESQ.
                            CityPlace I, 185 Asylum Street
                            Hartford, Connecticut 06103

Proceedings recorded by electronic sound recording.
Transcript prepared by transcription service.

---

BOWLES REPORTING SERVICE
P.O. BOX 607
GALES FERRY, CONNECTICUT 06335
(860) 464-1083

APPEARANCES (CONTINUED):

1          So it's obvious that there are many documents

2     that he has that he's not produced.

3          He talked today, Your Honor, about a hundred

4     e-mails, a hundred and fifty sworn statements,

5     affidavits of employees of Ocwen and Moss and Codilis,

6     letters involving the Office of Thrift Supervision.

7          All of those documents go potentially to the

8     issue, I would assume, of the propriety of class

9     certification.  None of those have been produced, and

10    it would seem to me that those documents -- I mean,

11    he's got right there, a file folder with those

12    documents in them.  We need to get those documents.  If

13    he's got a privilege claim, he needs to assert it.

14          THE COURT:  Some of them may be subject to his

15    own privilege claim, and that's something that would

16    have to be addressed by -- You have to do a privilege

17    log.

18          MR. SHIBER:  Which we don't have, Your Honor.

19          THE COURT:  Right.  You just can't refuse to

20    identify them.

21          MR. NGOBENI:  Your Honor, I think that the

22    Court has it right, in terms of what the issue is.  We

23    have never refused to identify anyone.

24          What we did was we asserted privilege,

25    including work product privilege, where I asked for

Exhibit B

## Kwęku Hanson

| | |
|---|---|
| **From:** | <NGOBENILAW@aol.com> |
| **To:** | ""Matthew Budzik"" <mbudzik@murthalaw.com>; <dmbizar@dbh.com>; <BSS@MSandR.com>; <RGC@MSandR.com>; ""Francis Brady"" <fbrady@murthalaw.com>; <jvandeweert@sidley.com>; <tscarborough@sidley.com>; <spadafora.l@wssllp.com> |
| **Cc:** | <leagltek@mindspring.com> |
| **Sent:** | Wednesday, December 31, 2003 1:32 PM |
| **Subject:** | Re: Hanson v. Ocwen et al.- AVAILABLE DOCUMENTS TO BE COPIED |

Dear All:

I am writing to let you know that plaintiff has available about 2, 260 documents responsive to all defendats' discovery request for your viewing, inspection and copying at a mutually convenient time.  The defendants will be required to pay for the said documents IN ADVANCE at the rate of 0.25 cents a page if they desire to have copies made for their benefit.  Plaintiff awaits further directions from defendants as to how they wish to proceed. However, plaiintiff does not wish to see a repeat of the spectable from last time where it was understood  that defendants agreed that one group of attorneys would receive one copy of the stack of documents for copying and distribution to all others.  That did not work very well as you know. Accordingly, plaintiff would like clarification as to how and when and how defendants would  like to coordinate production of the said materials.    I would appreciate a response within 24 hours of this e-mail.

Paul M. Ngobeni

3/10/2004

Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| KWEKU HANSON ) | DOCKET #**3:02CV960 (CFD)** |
| individually and on behalf of ) | |
| all others similarly situated ) | |
|            Plaintiffs ) | |
| ) | |
|      v. ) | |
| ) | |
| OCWEN FEDERAL BANK, ET. AL. ) | |
|          Defendants ) | MARCH 4, 2004 |
| ) | |

## AFFIDAVIT IN SUPPORT OF PLAINTIFFS' OPPOSITION TO LITTON LOAN SERVICING LP'S MOTION FOR DISMISSAL WITH PREJUDICE

Comes now Kweku Hanson who, being duly sworn, deposes and says as follows:

1.  I am the named Plaintiff in the above-captioned case, and as such I have personal knowledge of the matters hereinafter stated.

2.  I am over 18 years of age and understand and believe in the obligations of an oath. My mailing address is at 487 Main Street, #2, Hartford, CT 06103.

3.  I am actively employed as a lawyer at the above address.

4.  On November 24, 2003 in the company of Paul Ngobeni, Esq.., counsel for plaintiffs in this case, I attended, and was heard in, a multifaceted discovery dispute hearing at the federal court house in Bridgeport, Connecticut before the Honorable William I. Garfinkel.

- 1 -

5.   Judge Garfinkel's rulings which emanated that day from
     the bench and were later formalized into a written
     order are a matter of public record.

6.   In a nutshell, Judge Garfinkel ordered Plaintiffs to
     comply with Litton's discovery requests on or before
     December 31, 2003.

7.   Prior to attending the hearing, at the direction of
     Attorney Ngobeni, I had prepared responses to Litton's
     interrogatories and requests for production.

8.   I brought this stack of discovery responses (without
     the actual records to be produced) to the hearing in
     Bridgeport in an effort to "show and tell" that
     Plaintiffs had attempted to comply with Litton's
     discovery demands, at least as of the date of the
     November 24, 2003 hearing (and in truth as far back
     as around November 9th when we got notice of the
     hearing), in a good faith effort to avert sanctions.

9.   Indeed, it was this stack of Litton discovery-compliant
     pleadings piled up on the table at which I was seated
     that Attorney Shiber representing the Moss Codilis
     defendants erroneously pointed to in his argument on
     November 24, 2003. *See* Transcript of November 24, 2003
     Bridgeport Hearing, entitled <u>Motions Hearing Before
     Hon. William I. Garfinkel, USMJ</u>, at p.79, lines 9-12.

-2-

10. As a result of the orders which ensued at the Bridgeport hearing, as well as at a later, same-day, hearing in Hartford, it became necessary to hold back the already printed out responses to Litton's interrogatories and production requests, as Attorney Ngobeni said we had to include supplemental responses and expand the quantity of records to be turned over.

11. Given the exigency of having to comply with certain orders within ten (10) days, such as turning over information previously submitted *ex parte* and/or under seal; affirming whether Plaintiffs wanted an immediate preliminary injunction; revising and pruning Plaintiffs' Request for Admissions; etc., I had to busy myself in *ad hoc* meetings with Attorney Ngobeni.

12. As December 31, 2003 approached, under my sporadic supervision, I had my staff finalize thousands of pages of copies responsive to the defendants' discovery requests.

13. The overarching focus was on production of records, my sense after consultations with Attorney Ngobeni being that the defendants' counsels would attempt to physically inspect the records and select which items they wanted to be copied.

- 3 -

14.  Upon information and belief, Attorney Ngobeni notified all defense counsel via email that we had responses to all their outstanding discovery requests ready as of December 31, 2003.

15.  Attorney Ngobeni later instructed me to go ahead and make one set of copies of the thousands of pages of records, for Litton, following that party's confirmation to Attorney Ngobeni that it would have a courier prepay for, and pick up, Litton's discovery.

16.  Given that assurance, I assigned a Copy Code of 888 exclusively to Litton, and my staff (and others) began an almost 10 a.m. to midnight copying and collating of records for Litton.

17.  After Litton's xeroxes were done, I made a decision to save on monies by attaching my responses to the Interrogatories to Litton's box of xeroxes, since we expected pick-up by courier to occur imminently.

18.  Shortly, Attorney Ngobeni again alerted me that Moss Codilis had also agreed to pay for xeroxing. Frankly, given that Moss Codilis had last year agreed to pay for xeroxes of documents, I had expected them to be the first to agree to pay for the records and so I wisecracked to my secretary "What took them so long? Now you have to start the copying over again."

-4-

19.  By this time we had been able to discover a way to reproduce responsive emails in a digital (as opposed to paper) format.

20.  Given the exhaustive task of physically copying thousands of pages of papers, and not wanting to burden Litton's defense counsel with having to read through an additional several thousand pages of email printouts, we decided to give away email discovery material free to Litton and Moss Codilis.

21.  We "burnt" onto CD-RW initially, a copy of all emails.

22.  I assigned a copy code of 777 to Moss Codilis copies and had these copied within two days (or around mid-January, 2004).

23.  Likewise, I enclosed a copy of my responses to Litton's Interrogatories in Moss Codilis' box of records.

24.  About one week later, Attorney Ngobeni apprised me that the Ocwen defendants had also assented to pay the per copy charges being assessed and to proceed to replicate the records for them.

25.  Once again, I cobbled together different people to perform the copying. This time, I assigned a copy code of "**666**" to the Ocwen defendants.

26.  At this time, we switched to reproducing the emails on CD-R instead of CD-RW for security reasons.

- 5 -

27.  Ocwen, which had to comply with Plaintiffs' Request for Admissions by late January, 2004 (later extended upon Ocwen's motion to February, 2004) promptly sent a courier to come and collect its discovery material, on or about January 26, 2003.

28.  I personally showed Ocwen's courier three identical, stacked boxes of discovery and told to pick anyone (so as to establish that the contents of each was the same).

29.  I also handed, then took back, a CD-R marked "Ocwen Emails, Ocwen's copy," from a collection of three such CDs which were lying at my elbow at the desk where I was seated.

30.  Ocwen's courier returned later that day to prepay for the copies and pick up the CD-R.

31.  Nothing further was heard from Litton or Moss Codilis, and to this day their boxes of xeroxed discovery material and their "Ocwen Emails" CDs sit in our copy room, gathering dust until they prepay and pick them up, as per their own election.

32.  Further, Affiant sayeth not.

Dated at Hartford, CT, on March 4, 2004

Signed: _____

- 6 -

State of Connecticut()
                    SS: Hartford, March  4 , 2004
County of Hartford  ()

     Personally appeared **Kweku Hanson**, known to me, who

acknowledged under penalty of false statement that he signed this

Affidavit for the purposes therein stated.

_____

Notary Public/Commissioner of Superior Court

Carmen J. Crespo
**NOTARY PUBLIC**
MY COMMISSION EXPIRES NOV. 30, 2008

- 7 -

Exhibit D

**Nyieri Nazarian**

From:       "Luigi Spadafora, Esq." <spadafora.l@wssllp.com>
To:         <NGOBENILAW@aol.com>; """Matthew Budzik""" <mbudzik@murthalaw.com>;
            <dmbizar@dbh.com>; <BSS@MSandR.com>; <RGC@MSandR.com>; """Francis Brady"""
            <fbrady@murthalaw.com>; <jvandeweert@sidley.com>; <tscarborough@sidley.com>
Sent:       Thursday, January 15, 2004 4:00 PM
Subject:    RE: Hanson v. Ocwen et al.- AVAILABLE DOCUMENTS TO BE COPIED

Paul:

I don't quite understand this e-mail and would refer you back to my e-mail
of January 5, 2004 responding to your e-mail of December 31, 2003. If such
documents are ready, please let me know the exact amount for the
photocopying and I will send you a check. I would ask that you overnight
such documents to me when available. My firm's Airborne Express account
number is 88432114. Please address the package to me at my NYC office.

Thank you,

Luigi Spadafora, Esq.
WINGET, SPADAFORA & SCHWARTZBERG, LLP
45 Broadway, 19th Floor
New York, New York 10006
(212)221-6900
(212)221-6989 (facsimile)
E-Mail: spadafora.l@wssllp.com


-----Original Message-----
From: NGOBENILAW@aol.com [mailto:NGOBENILAW@aol.com]
Sent: Friday, January 09, 2004 5:21 PM
To: "Luigi Spadafora, Esq."; ""Matthew Budzik""; dmbizar@dbh.com;
BSS@MSandR.com; RGC@MSandR.com; ""Francis Brady"";
jvandeweert@sidley.com; tscarborough@sidley.com
Cc: leagltek@mindspring.com
Subject: RE: Hanson v. Ocwen et al.- AVAILABLE DOCUMENTS TO BE COPIED


Gentlemen:With regards to the discovery and document production which we on
December 31, 2003 gathered from their dispersed storage places and made
available for your inspection at Mr. Hanson's Office, we heard back from
some of the respective counsel. Ocwen's counsel wished to remove the
original documents from Mr. Hanson's premises and have IKON or some other
entity copy them and return them. However, Mr. Hanson categorically rejected
that. Any lawyer/agent is free to physically inspect the records [as
permitted under the Rules], but such a person would be subjected to the ad
hoc heightened security measures in effect while the documents are located
at Mr. Hanson's office. The measures in place include non-stop video
surveillance [and recording], continuous physical monitoring by someone from
Mr. Hanson's office, and other non-intrusive activity. Mr. Hanson is

sensitive to his attorney-client confidentiality obligations, and given his repeated allegations of lessthan-savory electronic activities directed against him, he will in no form, shape or manner takechances! Attorney Spadafora agreed to have his agent pay for, and pick up, the 2,260-plus papers. Consequently, copies have been made ONLY FOR LITTON. These material will be ready for pick up begining 10:00 a.m. Monday morning if that is more convenient. If any othercounsel alerts me by day's end today that they want copies made and will pay for them at the time of pick up, we will have such copies avaliable for pick up by 10:00 a.m. Monday; otherwise, we willendeavor to have the copies ready within one business day. As a courtesy to all defense counsel, we have decided to produce discoverable email records in the exact manner in which they were received. That is, not only are we furnishing defendants with emails that in print version would run approximately 3 pages per email and result in at least 12,000 additional hard copies, but we are NOT doing the emails as "cut-and-paste" digital records. Instead, we have invested heavily in a system which has allowed us to faithfully reproduce to you in the manner recieved, these 3,660 emails, to facilitate your viewing pleasure. And in the spirit of the season, it is entirely complimentary, due to the fact that electronic discovery is not cheap and we are not trying to make money off discovery. Hopefully, reciprocity will be the order of the day. We have at this time omitted copies of the envelopes in which the various affidavits and otheritems (if applicable) arrived. All original envelopes are available for inspection, and we will behappy to make copies for any party at its request. However, bear in mind that envelope copying is labor-intensive and cannot be automatic sorter-fed, so that there will be some time lapse between request for such records and fulfilment at $0.25 per page. Please note that our tedious, meticulous review of the thousands of email records is ongoing, and the tender of these 3660 emails is without prejudice to any supplemental generation of email records to you. Once again, in the true spirit of professionalism and cooperation, it would be useful to have immediate feedback from you regarding any discovery-related queries you may have.

Thank you all.
Paul M. Ngobeni

Exhibit E

**Kweku Hanson**

| | |
|---|---|
| From: | <NGOBENILAW@aol.com> |
| To: | ""Luigi Spadafora, Esq."" <spadafora.l@wssllp.com>; """Matthew Budzik""" <mbudzik@murthalaw.com>; <dmbizar@dbh.com>; <BSS@MSandR.com>; <RGC@MSandR.com>; """Francis Brady""" <fbrady@murthalaw.com>; <jvandeweert@sidley.com>; <tscarborough@sidley.com> |
| Cc: | <leagltek@mindspring.com> |
| Sent: | Friday, January 09, 2004 5:21 PM |
| Subject: | RE: Hanson v. Ocwen et al.- AVAILABLE DOCUMENTS TO BE COPIED |

Gentlemen:

With regards to the discovery and document production which we on December 31, 2003 gathered from their dispersed storage places and made available for your inspection at Mr. Hanson's Office, we heard back from some of the respective counsel. Ocwen's counsel wished to remove the original documents from Mr. Hanson's premises and have IKON or some other entity copy them and return them. However, Mr. Hanson categorically rejected that. Any lawyer/agent is free to physically inspect the records [as permitted under the Rules], but such a person would be subjected to the ad hoc heightened security measures in effect while the documents are located at Mr. Hanson's office. The measures in place include non-stop video surveillance [and recording], continuous physical monitoring by someone from Mr. Hanson's office, and other non-intrusive activity. Mr. Hanson is sensitive to his attorney-client confidentiality obligations, and given his repeated allegations of lessthan-savory electronic activities directed against him, he will in no form, shape or manner take chances!

Attorney Spadafora agreed to have his agent pay for, and pick up, the 2,260-plus papers.
Consequently, copies have been made ONLY FOR LITTON. These material will be ready for pick up begining 10:00 a.m. Monday morning if that is more convenient. If any other
counsel alerts me by day's end today that they want copies made and will pay for them at the time of pick up, we will have such copies avaliable for pick up by 10:00 a.m. Monday; otherwise, we will
endeavor to have the copies ready within one business day.
As a courtesy to all defense counsel, we have decided to produce discoverable email records in the exact manner in which they were received. That is, not only are we furnishing defendants with emails that in print version would run approximately 3 pages per email and result in at least 12,000 additional hard copies, but we are NOT doing the emails as "cut-and-paste" digital records. Instead, we have invested heavily in a system which has allowed us to faithfully reproduce to you in the manner recieved, these 3,660 emails, to facilitate your viewing pleasure. And in the spirit of the season, it is entirely complimentary, due to the fact that electronic discovery is not cheap and we are not trying to make money off discovery. Hopefully, reciprocity will be the order of the day.
We have at this time omitted copies of the envelopes in which the various affidavits and other items (if applicable) arrived. All original envelopes are available for inspection, and we will be
happy to make copies for any party at its request. However, bear in mind that envelope copying is labor-intensive and cannot be automatic sorter-fed, so that there will be some time lapse between request for such records and fulfilment at $0.25 per page.
Please note that our tedious, meticulous review of the thousands of email records is ongoing, and the tender of these 3660 emails is without prejudice to any supplemental generation of email records to you.
Once again, in the true spirit of professionalism and cooperation, it would be useful to have immediate feedback from you regarding any discovery-related queries you may have.


Thank you all.

Paul M. Ngobeni

Exhibit F

**Kweku Hanson**

| | |
|---|---|
| **From:** | <NGOBENILAW@aol.com> |
| **To:** | ""Matthew Budzik"" <mbudzik@murthalaw.com> |
| **Cc:** | <leagltek@mindspring.com> |
| **Sent:** | Monday, January 26, 2004 1:02 PM |
| **Subject:** | Re: Hanson |

Dear Attorney Budzik:

Please be advised that the disk you referenced and which contains all the e-mails you were promised is available at Mr. Hanson's office for immediate pickup.   Copies were made for you and all the other defendants as agreed.

Paul M. Ngobeni

**Kweku Hanson**

| | |
|---|---|
| **From:** | "Kweku Hanson" <leagltek@mindspring.com> |
| **To:** | "Matthew Budzik" <mbudzik@murthalaw.com>; <ngobenilaw@aol.com> |
| **Sent:** | Monday, January 26, 2004 1:25 PM |
| **Subject:** | Re: Email Discovery on CD-ROM |

Dear Paul:

Whil I did inform you that I had spoken informally with Attorney Budzik, your email was sent to him SUBSEQUENT to that, and is accurate. While you offered to personally redeliver it to him, I informed yu that his courier had agreed to return upon being notified to pick up the CD-ROM.

If Attorney Budzik sends his courier back, he will find the disk ready for slipping from my greasy plams into his eager fingers (the courier's, that is). But, as I indicated to both the courier and to you Paul, I unfortunately have to leave now for home until about 3 p.m. I will absolutely (God willing) be back by 3:00 p.m. [all my staff left with me] so the Ocwen defendants can pick up the disk at 3:01:01.01 p.m. [9:00 p.m. Greenwich Mean Time).

Kweku

----- Original Message -----
**From:** Matthew Budzik
**To:** ngobenilaw@aol.com
**Cc:** leagltek@mindspring.com
**Sent:** Monday, January 26, 2004 1:09 PM
**Subject:** Re: Hanson

I just spoke with Mr. Hanson an hour ago and says he does not have it.
I did sent a messenger to Mr. Hanson's office at that time and that
messenger had to come back empty handed. Mr. Hanson indicated that you
had the disk. I don't care who has it, but please confirm which one of
you does and I will have a messenger pick it up today.

Matthew J. Budzik, Esq.
Murtha Cullina LLP
185 Asylum Street
CityPlace I
Hartford, Connecticut 06103-3469

(860) 240-6103
(860) 240-6150 FAX

This message originates from the law firm of Murtha Cullina LLP. The
information contained in this e-mail and any files transmitted with it
may be a confidential attorney-client communication or may otherwise be
privileged and confidential. If the reader of this message, regardless
of the address or routing, is not an intended recipient, you are hereby
notified that you have received this transmittal in error and any
review, use, distribution, dissemination or copying is strictly
prohibited. If you have received this message in error, please delete
this e-mail and all files transmitted with it from your system and

immediately notify Murtha Culli( )LP by sending a reply e-mail to the ( ) sender of this me ,age. Thank you

>>> <NGOBENILAW ... .com - 01 26 04 01:02PM >>>
Dear Attorney Budzik:

Please be advised that the disk you referenced and which contains all the e-mails you were promised is available at Mr. Hanson's office for immediate pickup.  Copies were made for you and all the other defendants as agreed.

Paul M. Ngobeni

Exhibit G

**Kweku Hanson**

| | |
|---|---|
| **From:** | <NGOBENILAW@aol.com> |
| **To:** | ""Luigi Spadafora, Esq."" <spadafora.l@wsllp.com>; """Matthew Budzik""" <mbudzik@murthalaw.com>; <dmbizar@dbh.com>; <BSS@MSandR.com>; <RGC@MSandR.com>; """Francis Brady""" <fbrady@murthalaw.com>; <jvandeweert@sidley.com>; <tscarborough@sidley.com> |
| **Cc:** | <leagltek@mindspring.com> |
| **Sent:** | Friday, January 09, 2004 5:21 PM |
| **Subject:** | RE: Hanson v. Ocwen et al.- AVAILABLE DOCUMENTS TO BE COPIED |

Gentlemen:

With regards to the discovery and document production which we on December 31, 2003 gathered from their dispersed storage places and made available for your inspection at Mr. Hanson's Office, we heard back from some of the respective counsel. Ocwen's counsel wished to remove the original documents from Mr. Hanson's premises and have IKON or some other entity copy them and return them. However, Mr. Hanson categorically rejected that. Any lawyer/agent is free to physically inspect the records [as permitted under the Rules], but such a person would be subjected to the ad hoc heightened security measures in effect while the documents are located at Mr. Hanson's office. The measures in place include non-stop video surveillance [and recording], continuous physical monitoring by someone from Mr. Hanson's office, and other non-intrusive activity. Mr. Hanson is sensitive to his attorney-client confidentiality obligations, and given his repeated allegations of lessthan-savory electronic activities directed against him, he will in no form, shape or manner take chances!

Attorney Spadafora agreed to have his agent pay for, and pick up, the 2,260-plus papers.

Consequently, copies have been made ONLY FOR LITTON. These material will be ready for pick up begining 10:00 a.m. Monday morning if that is more convenient. If any other counsel alerts me by day's end today that they want copies made and will pay for them at the time of pick up, we will have such copies avaliable for pick up by 10:00 a.m. Monday; otherwise, we will endeavor to have the copies ready within one business day.

As a courtesy to all defense counsel, we have decided to produce discoverable email records in the exact manner in which they were received. Not only are we furnishing defendants with emails that in print version would run approximately 3 pages per email and result in at least 12,000 additional hard copies, but we are NOT doing the emails as "cut-and-paste" digital records. Instead, we have invested heavily in a system which has allowed us to faithfully reproduce to you in the manner recieved, these 3,660 emails, to facilitate your viewing pleasure. And in the spirit of the season, it is entirely complimentary, due to the fact that electronic discovery is not cheap and we are not trying to make money off discovery. Hopefully, reciprocity will be the order of the day. We have at this time omitted copies of the envelopes in which the various affidavits and other items (if applicable) arrived. All original envelopes are available for inspection, and we will be happy to make copies for any party at its request. However, bear in mind that envelope copying is labor-intensive and cannot be automatic sorter-fed, so that there will be some time lapse between request for such records and fulfilment at $0.25 per page.

Please note that our tedious, meticulous review of the thousands of email records is ongoing, and the tender of these 3660 emails is without prejudice to any supplemental generation of email records to you.

Once again, in the true spirit of professionalism and cooperation, it would be useful to have immediate feedback from you regarding any discovery-related queries you may have.


Thank you all.

Paul M. Ngobeni


3/11/2004